**CHESAPEAKE MOTOR LINES, INC.,**

v.

**UNITED STATES** of America and Interstate Commerce Commission.

**Civ. No. 9319.**

United States District Court.
D. Maryland.
Sept. 1, 1959.

Francis D. Murnaghan, Jr., Baltimore, Md., and Dale C. Dillon, Washington, D. C., for plaintiff.

Leon H. A. Pierson, U. S. Atty., Baltimore, Md., and Robert A. Bicks, Acting Asst. Atty. Gen., and James H. Durkin, Atty. Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, and Carroll T. Prince, Jr., Atty., I. C. C., Washington, D. C., for Interstate Commerce Commission.

Before SOBELOFF, Circuit Judge, and THOMSEN and WATKINS, District Judges.

THOMSEN, District Judge.

This is the second hearing before this court in a proceeding by Chesapeake Motor Lines, Inc. (Chesapeake) to obtain authority to carry "meats, meat products and meat by-products" over irregular routes from New York and points in New Jersey to Baltimore. The facts and the background of the case are set out in our first opinion, D.C., 153 F.Supp. 812, wherein we held that the case should be remanded to the Commission to reconsider the question whether the authority presently held by Chesapeake to carry "processed meats" over the desired routes includes the movement of fresh meat.

Pursuant to that decision the Commission held two hearings and filed two reports. In its report dated February 19, 1958, 74 M.C.C. 667, the Commission found that the term " 'processed meats' refers to meat which not only has been slaughtered, butchered, and cleaned, but which has been further processed by being cooked, artificially preserved in some way, or by having other ingredients, such as spices, added to it," [1] and concluded that the authority held by Chesapeake to transport processed meats from New York to Baltimore and Washington "does not authorize the transportation of fresh meats from and to these points." 74 M.C.C. at 670.

Chesapeake thereupon filed a petition for reconsideration and the Commission filed a report on reconsideration dated March 20, 1959, 79 M.C.C. 175. In response to Chesapeake's argument that its existing authority is ambiguous the Commission reviewed the proceedings by which that authority had been originally issued to Citro and acquired by Chesapeake, and found nothing to indicate any intent to grant authority to transport fresh meats. 79 M.C.C. at 179. The Commission further found "that appli-

[1]. The Commission stated: "While it is true, of course, that fresh meat has necessarily passed through certain 'processes,' including slaughtering, cleaning, and butchering, we cannot agree with Chesapeake's contention that it must therefore be included in the commodity description 'processed meats' as used in its certificate. On the contrary, it is our opinion that if either term is to have any distinct meaning they must be mutually exclusive. We believe that common usage supports our conclusion that 'processed meats' refers to meat which not only has been slaughtered, butchered, and cleaned, but which has been further processed by being cooked, artificially preserved in some way, or by having other ingredients, such as spices, added to it. The situation can be further clarified by considering this commodity description along with others in the same area. 'Fresh meat' includes not only carcass meat, but also cuts of meat such as steaks, roasts, and chops, and even ground meat. Frozen meat is also in this category. Refrigerated Transport Co., Inc., Extension—Meat, 72 M.C.C. 755. 'Prepared meats' is a very limited term referring only to products of the precooked or ready-to-eat variety, such as sausage and canned luncheon meat. Compare C. F. Mueller Co. v. Pennsylvania R. Co., 278 I.C.C. 751, which deals with cooked and seasoned macaroni, packed in jars. 'Processed meats' is a much broader term. It includes cured, smoked, salted, dried, and canned meats, and, in fact, encompasses the 'prepared meats' category. That there is a distinction between 'processed' and 'manufactured' is indicated in the Frozen Food Express case. Meat products such as bouillon cubes and chile con carne must be considered to be manufactured rather than processed, and, of course, the whole line of meat byproducts such as lard, soap stock, and the like are in the category of manufactured products." 74 M.C.C. at 670.

cant has failed to show that the present and future public convenience and necessity require the proposed operation." 79 M.C.C. at 181.

■ 1. It is unfortunate that the term "processed meats" is used in the certificate which Chesapeake now holds, rather than some term which has a more generally accepted meaning throughout the meat industry. See Descriptions in Motor Carrier Certificates, 61 M.C.C. 209, 766 (1952). Nevertheless, the conclusion of the Commission that the term does not include fresh meat is adequately supported by the findings and the record, and is not arbitrary or unreasonable. Malone Freight Lines Inc. v. United States, D.C., 107 F.Supp. 946, 949, affirmed 344 U.S. 925, 73 S.Ct. 497, 97 L. Ed. 712; Adirondack Transit Lines v. United States, D.C., 59 F.Supp. 503, 504, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393.

2. Chesapeake contends that the Commission, in finding that the existing service was adequate, improperly considered and relied on the service being rendered by a competing carrier (Pyramid) under temporary authority at the time of the application by Chesapeake which began the instant proceeding.

In August, 1951, the Commission had granted Pyramid temporary authority to transport meat and meat products both northbound and southbound between points in the Washington-Baltimore area, at one end, and points which Pyramid was then authorized to serve under its New York-Wilmington permanent operation, at the other end.

Shortly thereafter Pyramid had applied for permanent two-way authority for the service covered by its temporary authority. In May, 1954, the Commission had granted Pyramid's application for permanent authority southbound, but not northbound, and Pyramid had appealed, contending that it could not operate without two-way authority. Pyramid's temporary authority northbound and southbound remained in effect pending the appeal.

Meanwhile, in September, 1951, Citro, Chesapeake's predecessor, had been granted authority for cheese, processed meats and frozen foods from New York to Baltimore and Washington, and Chesapeake had purchased Citro's authority in May, 1952. Chesapeake thereafter had authority to transport meat, meat products and meat by-products north from Baltimore to New York, but its southbound authority from New York to Baltimore and Washington was limited to cheese, processed meats and frozen foods. In 1954, the question having arisen whether "processed meats" included fresh meat, Chesapeake applied for authority to transport, from New York City and adjacent points in New Jersey to Baltimore, dairy products, meat, meat products and meat by-products, as defined by the Commission in Appendices 1-A and 1-B of Descriptions in Motor Carrier Certificates, supra. Chesapeake's application also contended that the commodity description in its existing certificate was ambiguous and sought clarification of that authority.

The original decision of the Commission, 64 M.C.C. 748 (1955), denied Chesapeake's application, and Chesapeake filed its petition in this court. Before our first hearing, however, the Commission considered additional, related applications of Pyramid and Chesapeake, and on July 16, 1956, granted Pyramid's application for northbound, as well as southbound, permanent authority, and granted Chesapeake's application for authority to transport meats, meat products and meat by-products southbound, but from Philadelphia only. 67 M.C.C. 641.

■ Chesapeake's contention that the Commission had no right to consider the service being rendered by Pyramid under its temporary authority cannot prevail. The burden was on Chesapeake to establish that public convenience and necessity required the granting of the additional authority which it had requested. Proof of necessity ordinarily requires a showing that present facilities are inadequate. Hudson Transit

Lines v. United States, D.C., 82 F.Supp. 153, affirmed United States v. Hudson Transit Lines, Inc., 338 U.S. 802, 70 S. Ct. 59, 94 L.Ed. 485.[2] In passing on this question, the Commission had the right to consider the nature and quality of Pyramid's service, along with the service of any other carriers, despite the fact that Pyramid's service was being rendered under temporary authority. Moreover, at the time of the hearing before the Commission in 1955, Pyramid had already been granted permanent authority southbound; it was still operating under its temporary authority southbound only because it had appealed from the order of the Commission, which had refused to give it permanent authority northbound. That authority was granted in 1956, and Pyramid has been operating under permanent authority both ways since then.

 We have difficulty reconciling the decision of the Commission in this case with its decision in Pyramid Motor Freight Corp. Extension-Frozen Food, 67 M.C.C. 641, wherein it granted Pyramid's application for permanent authority northbound as well as southbound. The Commission, however, has wide discretion in such proceedings. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051; United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38. Congress has delegated to the Commission the authority to determine whether certificates of public convenience and necessity are to be granted or denied.

The function of a reviewing court is more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. The reviewing court "cannot substitute its own view concerning what should be done, whether with reference to competitive considera-

tions or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law". United States v. Pierce Auto Freight Lines, 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821. See also Riss & Co., Inc. v. United States, D.C., 100 F.Supp. 468, affirmed 342 U.S. 937, 72 S.Ct. 559, 96 L.Ed. 697, rehearing denied 343 U.S. 937, 72 S.Ct. 769, 96 L.Ed. 1344. We cannot say that the findings and record furnish no support for the Commission's denial of Chesapeake's application.

The order of the Commission is affirmed. Chesapeake is of course free to reapply to the Commission if a change in conditions has occurred since the passage of the order here reviewed.

---

**2.** This does not mean, however, that the holder of a certificate is entitled to immunity from competition under any and all circumstances; the introduction of a competitive service may be in the public interest where it will secure the benefits of an improved service without being unduly prejudicial to the existing services. Hudson Transit Lines v. United States, supra.