**KEYSTONE MOTOR EXPRESS, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant,

and

Interstate Commerce Commission, et al.,
Intervening Defendants.

Civ. A. No. 2629.

United States District Court
S. D. West Virginia,
Charleston Division.

April 21, 1964.

Greek, King & McMahon, by John P. McMahon, Columbus, Ohio, for plaintiff Keystone Motor Express, Inc.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant the United States.

Robert W. Ginnane and Fritz R. Kahn, Washington, D. C., for intervening defendant Interstate Commerce Commission.

Macdonald & McInerny, by James W. Lawson, Washington, D. C., Wood, Hanna, Bartlett & Bias, by Homer W. Hanna, Jr., Charleston, W. Va., and McChesney & Kinker, by Harry V. McChesney, Jr., Frankfort, Ky., for intervening defendants Bell Lines, Inc., Point Express, Inc., Reinhardt Transfer Co., Braddock Motor Freight, Inc., and Huber & Huber Motor Express, Inc.

Before BOREMAN, Circuit Judge, and FIELD and PAUL, District Judges.

## PER CURIAM:

This is an action to enjoin, set aside, annul and suspend in its entirety an order of the Interstate Commerce Commission. Jurisdiction is vested in this Court pursuant to 49 U.S.C. § 17(9), 17(6) and Title 28 U.S.C. §§ 1336, 1398, 2284 and §§ 2321 to 2325, inclusive. The principal issue in this controversy involves what plaintiff alleges are or should be its rights with respect to the transportation of general commodities in an eastbound direction between the intermediate points of Portsmouth and Ironton, Ohio, and Huntington, West Virginia, to Charleston, West Virginia. Plaintiff is a West Virginia corporation located in Huntington, West Virginia, and operates in West Virginia, Ohio and Pennsylvania. The regular route authority under which plaintiff operates has been in the hands of a number of carriers since 1935. Plaintiff acquired the grant under which it presently operates from Greig Freight Lines, Inc., in 1956.

Jenkins & Jenkins, by C. Robert Schaub, Huntington, W. Va., and George,

By an order entered April 16, 1959, the Commission instituted an investiga-

tion under sections 204(c) and 212(a) of the Interstate Commerce Act to determine whether plaintiff was operating in violation of the terms of its present certificate issued on October 21, 1958, in Docket No. MC–16344. The pertinent part of that certificate reads as follows:

"*General commodities,* (Usual exceptions)

"From Charleston, W. Va., to Cincinnati, Ohio, serving the intermediate points of Huntington, W. Va., and Portsmouth, and Ironton, Ohio:

"From Charleston over U. S. Highway 60 to Huntington, W. Va., and thence over U. S. Highway 52 to Cincinnati; and

"*Gas cylinders* and *rubber tires,*

"From Cincinnati, Ohio, to Charleston, W. Va., serving the intermediate points of Portsmouth, and Ironton, Ohio, and Huntington, W. Va.:

"From Cincinnati over U. S. Highway 52 to Huntington, W. Va., and thence over U. S. Highway 60 to Charleston."

On July 6, 1959, plaintiff filed a petition seeking interpretation and modification of this certificate to recognize its authority for general commodities service eastbound at the intermediate points of Portsmouth and Ironton and, if necessary for this purpose, to reopen the "grandfather" proceeding in which the initial certificate had been issued to its remote predecessor, Motor Transit Company. At the same time plaintiff filed a new service application under section 207 of the Act seeking eastbound general commodities authority at Portsmouth and Ironton in the event of an adverse ruling in the other proceedings.

The three proceedings were consolidated and heard in February, 1961. The examiner found that plaintiff was transporting general commodities eastbound without appropriate authority for such service, and recommended that a cease and desist order be issued. He also found that it would serve no useful purpose to grant plaintiff's request to change the wording of its certificate to conform to the language of the certificate originally issued in the "grandfather" proceeding since no authority for the general eastbound service could be found in the original grant nor in any of the transferee certificates issued to plaintiff's predecessors. The examiner further found that plaintiff had failed to establish a basis for reopening the "grandfather" proceeding. He also found that the evidence did not warrant the issuance of a new certificate authorizing the subject eastbound service.

On August 11, 1961, the Interstate Commerce Commission, Division 1, entered an order implementing the findings and recommendations of the examiner. On September 5, 1961, plaintiff tendered a document entitled "Petition for Reconsideration as of Right to Decision and Order of Division 1, Dated August 11, 1961." On September 26, 1961, the Secretary of the Commission advised plaintiff that the petition could not be accepted for filing inasmuch as Section 1.-101 of the General Rules of Practice, as amended by order of the Commission, provided that a Division 1 decision was the final decision of the Commission. Thereafter plaintiff instituted this action and the Commission postponed the effective date of its order of August 11, 1961, until further order.

Plaintiff contends that the decision of the Commission should be set aside for the following reasons: (1) The Commission changed the certificates of public convenience and necessity of plaintiff and its predecessors in interest without complying with the provisions of 49 U.S.C. § 312(a) respecting amendments, changes or revocations of certificates of public convenience and necessity. (2) The Commission's order finding that plaintiff was not entitled to transport general commodities in an eastbound direction was arbitrary, discriminatory, unlawful and contrary to fact. (3) The Commission's order finding that the evidence failed to establish a basis for reopening the "grandfather" proceeding was unreasonable, unlawful and contrary to fact. (4) The Commission's order finding that

the evidence did not justify the issuance of a certificate of public convenience and necessity was arbitrary, unreasonable and contrary to fact. (5) The Commission was not entitled to change its General Rules of Practice to affect a case pending before the Commission and thereby deprive plaintiff of its right to file a petition for reconsideration by the entire Commission.

In regard to plaintiff's contention that the Commission changed the wording of the authority granted in the certificates of plaintiff and its predecessors, Section 212(a) of the Interstate Commerce Act, 49 U.S.C. § 312(a) in its pertinent part provides:

"(a) Certificates, permits, and licenses shall be effective from the date specified therein, and shall remain in effect until suspended or terminated as herein provided. Any such certificate, permit, or license may, upon application of the holder thereof, in the discretion of the Commission, be amended or revoked, in whole or in part, or may upon complaint, or on the Commission's own initiative, after notice and hearing, be suspended, changed, or revoked, in whole or in part, for willful failure to comply with any provision of this chapter, or with any lawful order, rule, or regulation of the Commission promulgated thereunder, or with any term, condition, or limitation of such certificate, permit, or license: *Provided, however,* That no such certificate, permit, or license shall be revoked (except upon application of the holder) unless the holder thereof willfully fails to comply, within a reasonable time, not less than thirty days, to be fixed by the Commission, with a lawful order of the Commission, made as provided in section 304(c) of this title, commanding obedience to the provision of this chapter, or to the rule or regulation of the Commission thereunder, or to the term, condition, or limitation of such certificate, permit, or license,

found by the Commission to have been violated by such holder: * *."

It is clear that section 212(a) of the Act provides the manner by which certificates may be changed. Watson Bros. Transp. Co. v. United States, 132 F.Supp. 905 (D.C.Neb.1955); Movers Conference of America v. United States, 205 F.Supp. 82 (S.D.Calif.1962). The question presented here, however, is whether the changes of phraseology in the transferee certificates did effect any changes in the authority granted under the terms of the original "grandfather" certificate. That certificate read as follows:

"Between Charleston, W. Va., and Cincinnati, Ohio, as follows:

"*Commodities generally,* with exceptions as indicated above,

"From Charleston over U. S. Highway 60 to Huntington, W. Va., thence over U. S. Highway 52 to Cincinnati; and

"*Gas cylinders* and *rubber tires,*

"From Cincinnati over the above-specified route to Charleston.

"Intermediate points: Huntington, W. Va., and Portsmouth and Ironton, Ohio."

▇ ▇ To us it is clear that the authority conferred by this certificate was one-way authority for the transportation of general commodities westbound from Charleston to Cincinnati, and the transportation of gas cylinders and rubber tires eastbound from Cincinnati to Charleston. This construction of the certificate is consistent with past holdings of the Commission in similar cases, Washington Express, Inc., 63 M.C.C. 537 (1955); Burlington-Chicago Cartage, Inc., 58 M.C.C. 465 (1952); and even should we assume, arguendo, that there is some ambiguity in the language of either the "grandfather" certificate or the one presently held, the construction placed on these certificates by the Commission would be controlling unless arbitrary or clearly erroneous. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1957);

Burlington-Chicago Cartage, Inc. v. United States (S.D.Ill.1959) 178 F.Supp. 857.

We agree with the Commission's finding that the language of the present certificate carries the same authority as the "grandfather" permit—no more and no less; and that the changes in the phraseology of the transferee certificates [1] from time to time did not erode the "grandfather" rights nor reduce in anywise the authority originally conferred. The cases of United States v. Seatrain Lines, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396 (1946); Movers Conference of America v. United States, supra; and Watson Bros. Transp. Co. v. United States, supra, cited by plaintiff are clearly distinguishable from the case at bar. In those cases the Commission was actually attempting to change the authority clearly covered under the original grant without observing the requirements of section 212(a). Such an attempt by the Commission is not present here.

What we have said on the first point is also dispositive of plaintiff's contention that the Commission's finding in regard to existing eastbound authority was arbitrary, discriminatory and contrary to fact.

■ ■ We also agree with the Commission's refusal to reopen the "grandfather" proceeding. "Grandfather" clause rights determined many years ago should not be reopened or modified except when there is definite and positive evidence that a miscarriage of justice has occurred. Newsom Trucking Co., Inc., Common Carrier Application, 71 M.C.C. 663; Freightways, Inc., Modification of Certificate, 54 M.C.C. 789. Section 206 (a) of the Act authorizes the issuance

---

[1]. "Certificate Issued January 14, 1941, MC-71110

"Between Charleston, W. Va., and Cincinnati, Ohio, as follows:
  "*General commodities*, except those of unusual value, and except household goods as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467, dangerous explosives, commodities in bulk, commodities requiring special equipment, and those injurious or contaminating to other lading,
  "From Charleston over U. S. Highway 60 to Huntington, W. Va., thence over U. S. Highway 52 to Cincinnati; and
  "*Gas cylinders* and *rubber tires*,
  "From Cincinnati over the above-specified route to Charleston.
  "Service is authorized to and from the intermediate points of Huntington, W. Va., and Portsmouth and Ironton, Ohio.
"Certificate Issued to Greig Freight Lines, Inc., January 3, 1951, MC-61600
"General Commodities, (usual exceptions)
  "From Charleston, W. Va., to Cincinnati, Ohio:
  "From Charleston over U. S. Highway 60 to Huntington, W.Va., thence over U. S. Highway 52 to Cincinnati, with no transportation for compensation on return except as otherwise authorized.
  "Service is authorized to and from the intermediate points of Huntington, W.Va., and Portsmouth and Ironton, Ohio.
  "*Gas cylinders* and *rubber tires*,

"From Cincinnati, Ohio, to Charleston, W. Va.:
  "From Cincinnati over the route specified immediately above to Charleston, with no transportation for compensation on return except as otherwise authorized.
  "Service is authorized to and from the intermediate points of Huntington, W. Va., and Portsmouth and Ironton, Ohio.
"Certificate Issued to Plaintiff, Keystone Motor Express, Inc. on December 11, 1956, MC-16344, Sub 5
"*General commodities*, (usual exceptions)
  "From Charleston, W. Va., to Cincinnati, Ohio serving the intermediate points of Huntington, W. Va., and Portsmouth and Ironton, Ohio:
  "From Charleston over U. S. Highway 60 to Huntington, W. Va., and thence over U. S. Highway 52 to Cincinnati, and return over the same route with no transportation for compensation except as otherwise authorized.
"*Gas cylinders* and *rubber tires*,
  "From Cincinnati, Ohio to Charleston, W. Va., serving the intermediate points of Portsmouth and Ironton, Ohio, and Huntington, W. Va.:
  "From Cincinnati over U. S. Highway 52 to Huntington, W. Va., and thence over U. S. Highway 60 to Charleston, and return over the same route with no transportation for compensation except as otherwise authorized."

of a certificate if a carrier or its predecessor was "in bona fide operation" over the subject routes on June 1, 1935. The term "bona fide operation" was defined in United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480, 62 S.Ct. 722, 726, 86 L.Ed. 971 (1941), as follows:

> "* * * The Act provides the test of 'bona fide operation'. That standard carries the connotation of substantiality. It also makes clear that a holding out to serve a specified area is not alone sufficient. It is 'actual rather than potential or simulated service' which is required. McDonald v. Thompson, 305 U.S. 263, 266 [59 S.Ct. 176, 178, 83 L.Ed. 164]. Substantial, as distinguished from incidental, sporadic, or infrequent, service is required."

At the hearing, an abstract of eastbound shipments of plaintiff's predecessor, Motor Transit Company, for the period from March, 1935, to January, 1937, was presented. This abstract shows that only one shipment was made prior to June 1, 1935, and that was a cargo of stoves shipped on May 20, 1935, from Ironton, Ohio, to Clarksburg, West Virginia. Between June 1, 1935, and January, 1937, fifteen shipments of general commodities were made; eight from Cincinnati, four from Ironton and three from Portsmouth. The plaintiff has the burden of proving that the operations in question were actual and substantial. Evans v. United States, 65 F.Supp. 183 (W.D.Va.1946); Elliott Bros. Trucking Co. v. United States, 59 F.Supp. 328 (D. C.Md.1945). Despite this fact, the plaintiff declined to produce any additional evidence on this point. Upon the record before it, the conclusion of the Commission that such shipments were not substantial was a reasonable one, and assuredly the evidence did not disclose any miscarriage of justice which would justify or require that the "grandfather" proceeding be reopened.

In regard to the Commission's refusal to grant plaintiff's new service application for authority to transport general commodities in an eastbound direction between the intermediate points of Portsmouth and Ironton, Ohio, and Huntington, West Virginia, it is well settled that Congress has delegated to the Commission broad discretion to determine whether a public convenience and necessity exists, and it is not the function of this Court to determine factual issues which have been entrusted to the Commission. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945); Chesapeake & Ohio Ry. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824 (1931). If there is support for the Commission's findings in law and fact, the reviewing court cannot substitute its own views for that of the Commission. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1945); Chesapeake Motor Lines, Inc. v. United States, 176 F.Supp. 98 (D.Md.1959). We are of the opinion that the record supports the Commission's denial of plaintiff's application.

Finally, plaintiff contends that the Commission changed its General Rules of Practice so that plaintiff was deprived of the right to petition for reconsideration by the entire Commission and that such change was unlawful insofar as it affected the rights of parties in pending cases. On January 4, 1961, the Commission entered an order, which became effective on February 1, 1961, amending its General Rules of Practice. This amendment, Rule 1.101, had the effect of making final a division decision which had adopted a hearing examiner's decision, unless the case involved a matter of general transportation importance, thereby limiting the right to apply for reconsideration of such cases to the entire Commission. Plaintiff filed its petition on July 6, 1959, but the hearing was not held until February 2, 1961, one day after the effective date of the amendment. The general rule is that amendments touching only procedure apply to pending actions. United Wall Paper Factories, Inc. v. Hodges, 70 F.2d 243 (2d

Cir.1934). It is clear that Rule 1.101 is entirely procedural affecting the procedure of reaching a final administrative determination before the Commission, and therefore could properly be applied to all pending cases. The validity of Rule 1.101 was upheld in City of Philadelphia v. United States, 197 F.Supp. 832 (E.D. Pa.1961), where it was held that absent a showing of a question of general transportation importance, a division decision under the terms of the Rule is final and does not constitute an unfair denial of plaintiff's rights. Plaintiff has not shown a question of general transportation importance and is therefore not entitled to reconsideration by the entire Commission.

Our review indicates that the record does not support any of the contentions of the plaintiff, and accordingly the decision of the Interstate Commerce Commission should be affirmed.

Affirmed.