Bernard R. LANG, Plaintiff,

v.

Stephen BERGER, Commissioner, New York State Department of Social Services, et al., Defendants.

No. 76 Civil 1737.

United States District Court, S. D. New York.

Feb. 8, 1977.

Joseph S. Lobenthal, Jr., New York City, for plaintiff; Laura D. Hoffberg, New York City, of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendants Smith, Bellin, Williams, Gentry, Paris, Abberman and Lu-rie; Philip Agree, Michael McLoughlin, Asst. Corp. Counsels, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendants Berger, Myers, Whalen, Toff, Korolenko, and Schechtman; Robert S. Hammer, Asst. Atty. Gen., New York City, of counsel.

EDWARD WEINFELD, District Judge.

■ Plaintiff, a physician licensed to practice in the State of New York, was a provider of professional medical services under the Medicaid program. His practice consisted largely of treating Medicaid patients, which provided his principal source of income. The defendants are thirteen state and city officials charged with the administration of the Medicaid program in New York City, where plaintiff practiced. On January 29, 1976, plaintiff was notified by letter that effective February 16, 1976, he would be disqualified from statewide participation in the Medicaid program for alleged violations of the rules and regulations of the program. Plaintiff then commenced this action under the Civil Rights Act,[1] alleging various violations of his federally protected constitutional rights. He seeks a declaratory judgment annulling all proceedings taken against him to date and an injunction against any further proceedings; he also seeks three million dollars compensatory and eight million dollars punitive damages from the defendants. Before the Court now are plaintiff's motions for the convening of a three-judge court to consider one of his claims,[2] for a preliminary injunction and for partial summary judgment, and defendants' cross-motions that the Court abstain from asserting jurisdiction or that it dismiss the complaint.

The focus of the controversy is Item 35 of the New York State Medical Handbook, comprising regulations prepared by the New York State Department of Health ap-

---

1. 42 U.S.C. § 1983.

2. Since this action was commenced prior to the recent repeal of 28 U.S.C. § 2281, its provisions remain applicable here. P.L. 94–381, 90 Stat. 1119, § 7 (1976).

plicable to the Medicaid program.[3] Item 35 is entitled "Unacceptable Practices and Fraud by Providers." Under Item 35, when a physician is suspected of engaging in "unacceptable practices" he is called to a conference with a representative of the State Department of Health at which an effort is made to resolve the matter. If no informal resolution is reached at this conference the representative, in consultation with the official in charge of the local Medicaid program, may decide upon some administrative action ranging from censure or audit, through denial of payment on disputed claims, to suspension or permanent disqualification from the program. The physician must be notified in writing of any administrative action and of his right to a hearing to appeal the decision. If he requests a hearing he is entitled to notice of the charges, to be represented by counsel, to cross-examine witnesses and to present evidence on his behalf. · Implementation of any decision must be delayed until after the determination of his appeal.

The events that triggered this litigation commenced on November 19, 1975, when plaintiff was called to a conference with the Deputy Executive Medical Director of the New York City Medicaid program pursuant to Item 35. He was advised that an audit of the invoices he had submitted to the Medicaid program revealed an excessive number of prescriptions for Valium and Elavil, two mood-altering drugs;[4] that his records were inadequately kept and did not indicate sufficient basis for the prescriptions which had been written; and that plaintiff had received Medicaid payments for services and consultations that were not medically justified. Plaintiff was further told that the City Department of Social Services, the agency in charge of administering the Medicaid program within New York City, would withhold payment of approximately $25,000 in invoices previously submitted by plaintiff pending a determination of what amount would be sought as restitution for plaintiff's alleged overbillings during his entire participation in the Medicaid program, and that further administrative action might be taken against him.

Plaintiff subsequently abandoned his medical practice in New York and moved to Florida, where he is also admitted to practice.[5] He also retained an attorney and on December 29, 1975 commenced an action in the Supreme Court of the State of New York seeking to compel immediate payment of the $25,000 in withheld invoices. That action was dismissed on September 9, 1976, as prematurely brought since plaintiff had not exhausted his administrative remedies. The state court specifically held that state law authorized the defendants to withhold payments pending an investigation and possible administrative action; that issue is not before the Court in this case.

Meanwhile plaintiff received the letter of January 29, 1976, previously referred to, informing him of his disqualification from participation in New York State's Medicaid program. Plaintiff's disqualification was stated to be due to allegedly "improper practices," including (1) keeping improper and incomplete medical records; (2) improper prescribing of Valium and Elavil; (3) submitting invoices for first visits when "proper first visit care" was not rendered; and (4) submitting invoices for "follow-up visits of undocumented medical necessity."

**3.** New York State's Medicaid program is administered by local public welfare districts under the supervision of the State Department of Social Services. N.Y.Soc.Serv.L. § 365(1) (McKinney 1976). The State Department of Health is responsible for setting and enforcing standards for medical care. *Id.* § 364(2).

**4.** According to defendants, an audit of their records revealed that during the month of August 1975 alone, one pharmacy submitted invoices for 250 prescriptions written by plaintiff in which both Valium and Elavil were pre-

scribed. A review of the charts of 25 of those patients, chosen at random, showed that plaintiff had written them over 750 prescriptions for Valium and Elavil over the course of about one year. Many of these patients were drug addicts or former drug addicts; defendants have adduced evidence that the prescription of Valium and Elavil to persons with a history of drug addiction can be dangerous.

**5.** Defendants contend that plaintiff had previously intended to move to Florida.

The letter also informed plaintiff of his right to a hearing at which he could be represented by counsel, could cross-examine witnesses, and could present evidence on his behalf. The letter further stated that if plaintiff requested a hearing "all administrative action will be held in abeyance until a final decision is reached."

Upon receipt of the letter plaintiff's attorney promptly requested a hearing and demanded that he be given detailed notice of the specific charges against plaintiff and that the hearing be delayed "pending a determination of the Constitutionality of Item 35 and all other regulations permitting you to proceed as you are doing." The hearing was convened on April 5, 1976, at which time plaintiff placed his constitutional objections on the record. The hearing was thereupon adjourned. The administrative proceeding has been held in abeyance pending this Court's determination of the pending motions.

The main thrust of plaintiff's claims appears to be that (1) Item 35 of the New York State Medical Handbook is a "nullity" because of failure to comply with provisions of the New York State Constitution requiring filing of regulations with the Secretary of State; (2) even if Item 35 is not a nullity, it is unconstitutionally vague in many respects; (3) defendants have conspired to deny plaintiff due process of law with respect to the hearing; and (4) defendants have also conspired to deprive him of equal protection of the laws and such other rights as he may have as a provider of services.

Plaintiff's most vigorously pressed claim is that proceedings against him under Item 35 deny him due process of law because the definition of "unacceptable practices" [6] contained therein is so vague as to be unconstitutional.[7] Even if it is not a formally promulgated regulation of the state,[8] Item 35 is "an order made by an administrative board or commission acting under State statutes" [9] intended to effectuate a statewide policy. Plaintiff's claim that Item 35 is unconstitutionally vague is thus within the category of cases for which a statutory three-judge court is required if a substantial issue is presented.[10] However, after careful consideration the Court has concluded that plaintiff's claim is so insubstantial that a three-judge court need not be convened to consider it.[11]

6. "Unacceptable practices by providers may include, but are not limited to provision of care of poor and unacceptable quality; flagrant and continuing disregard of established policies, standards, fees and procedures; provision of excessive, unnecessary, professionally unacceptable, unproven or experimental care." § 35.1.B.2.

7. Plaintiff also claims that Item 35 is unconstitutionally vague because it allows a variety of punishments to be imposed upon a physician found guilty of unacceptable practices without enumerating the conditions under which each will be invoked. However, the mere presence of some discretion does not make a regulation unconstitutionally vague, as long as the regulation provides fair notice of the prohibited conduct. *See* cases cited n. 12 *infra*; *Snell v. Wyman*, 281 F.Supp. 853, 863–65 (S.D.N.Y. 1968), *aff'd*, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969); *cf. United States ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1000–01 (8th Cir. 1970).

8. *See* pp. 213–214 *infra*.

9. 28 U.S.C. § 2281 (1970).

10. *Maggett v. Norton*, 519 F.2d 599, 602–03 (2d Cir. 1975); *see Board of Regents v. New Left Educ. Project*, 404 U.S. 541, 542, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972); *King v. Smith*, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Wisdom v. Norton*, 507 F.2d 750, 757–58 (2d Cir. 1974). A three-judge court is required even to consider the appropriateness of abstention or of dismissal pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Steffel v. Thompson*, 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *McRedmond v. Wilson*, 533 F.2d 757, 764 (2d Cir. 1976); *Abele v. Markle*, 452 F.2d 1121, 1125 (2d Cir. 1971), *vacated*, 410 U.S. 951, 93 S.Ct. 1412, 35 L.Ed.2d 683 (1973). *Cf. Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). *But cf. Shelton v. Smith*, 547 F.2d 768, 769–770 (2d Cir. 1976).

11. *See Hagans v. Lavine*, 415 U.S. 528, 534–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Goosby v. Osser*, 409 U.S. 512, 518–19, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Ex parte Poresky*, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933);

■ A statute or regulation is unconstitutionally vague only if its meaning is so ambiguous or unclear that the persons affected must guess at its meaning.[12] Plaintiff's claim of vagueness must be considered in light of the purposes and effects of this particular regulation.[13] First, since Item 35 does not inhibit the exercise of any First Amendment freedoms, the strict scrutiny appropriate when such fundamental liberties are at stake is not appropriate here.[14] Moreover, Item 35 does not carry such severe sanctions as criminal penalties or total denial of the right to practice medicine. Rather, this case concerns the state's enumeration of conditions under which it will maintain contractual relations with a doctor who has freely chosen to participate in the Medicaid program. Such a regulation calls for less exacting review than a criminal or licensing statute.[15]

■ While the wording of Item 35, as is true of most regulations, could be improved, it is difficult to believe that a physician of average intelligence would not understand what is meant, for example, by "care of poor and unacceptable quality" or "provision of excessive, unnecessary, professionally unacceptable, unproven or experimental care."[16] Instead of attempting to compile a lengthy list defining every conceivable form of "unacceptable practice"—an approach which might unduly fetter the exercise of a doctor's professional judgment— the state has chosen to give general notice of the categories of activity it will not tolerate. This alternative is not unconstitutional.[17]

*Wisdom v. Norton*, 507 F.2d 750, 758 (2d Cir. 1974).

**12.** *E. g., Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cameron v. Johnson*, 390 U.S. 611, 615–16, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); *Cramp v. Board of Public Instruction*, 368 U.S. 278, 287, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

**13.** *See American Communications Ass'n v. Douds*, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925 (1950):
"The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important."

**14.** *Rose v. Locke*, 423 U.S. 48, 50 n. 3, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Smith v. Goguen*, 415 U.S. 566, 573 & n. 10, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 36, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). *See Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Cramp v. Board of Public Instruction*, 368 U.S. 278, 287–88, 82 S.Ct. 275, 7 L.Ed.2d 285 (1963); *United States v. Chestnut*, 394 F.Supp. 581, 588 (S.D.N.Y.1975).

**15.** *See Horvath v. City of Chicago*, 510 F.2d 594, 596 (7th Cir. 1975); *Brennan v. Occupational Safety & Health Review Comm'n*, 505 F.2d 869, 872 (10th Cir. 1974); *Massachusetts*

*Welfare Rights Org. v. Ott*, 421 F.2d 525, 527 (1st Cir. 1969); *Henkes v. Fisher*, 314 F.Supp. 101, 107–08 (D.Mass.1970), *aff'd*, 400 U.S. 985, 91 S.Ct. 462, 27 L.Ed.2d 436 (1971); *Snell v. Wyman*, 281 F.Supp. 853, 863–65 (S.D.N.Y. 1968), *aff'd*, 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969).

**16.** *See Civil Service Comm'n v. Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973):
"[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest."
*See also Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

**17.** *Arnett v. Kennedy*, 416 U.S. 134, 158–62, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Grayned v. City of Rockford*, 408 U.S. 104, 110–11, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
Courts have often upheld statutes or regulations applying to the practice of medicine which contain language similar to that involved in this case, often recognizing the importance of medical discretion and the problems inherent in trying to define its exercise too precisely. *See, e. g., Doe v. Bolton*, 410 U.S. 179, 191–92, 93 S.Ct. 739, 747, 35 L.Ed.2d 201 (1973) ("based upon his best clinical judgment that an abortion is necessary"); *United States v. Rosenberg*, 515 F.2d 190, 197–98 (9th Cir.), *cert.*

■ Moreover, plaintiff cannot seriously contend that he was not aware that the practices with which he is charged—including unwarranted and excessive prescriptions of potentially dangerous drugs, one of which is a controlled substance under New York law,[18] and billing for services which were unnecessary or not actually performed—were improper and that even apart from the proscriptions of Item 35 the state might be under no obligation to pay for such practices.[19] "[E]ven if the outermost boundaries of [the regulation] may be imprecise, any such uncertainty has little relevance here, where [plaintiff's] conduct falls squarely within the 'hard core' of the statute's proscriptions . . . ."[20]

■ Of controlling importance, however, is the Supreme Court's affirmance, in *Association of American Physicians and Surgeons v. Weinberger*,[21] of a lower court decision rejecting a vagueness challenge to a strikingly similar federal statutory scheme.[22] The purpose of the federal law there under consideration, like that of Item 35, is to limit the unnecessary and improper use of medical facilities and medical care under, *inter alia,* the Medicaid program. To achieve this goal Congress provided in that statute that physicians operating under the Medicaid program had the obligation to ensure that medical care

(A) will be provided only when, and to the extent, medically necessary; and

(B) will be of a quality which meets professionally recognized standards of health care; and

(C) will be supported by evidence of such medical necessity and quality in such form and fashion and at such time as may reasonably be required . . . .[23]

If a physician does not meet these standards, federally funded Medicaid payments cannot be made for the services in question, and if the abuse is flagrant or repeated, the physician can be permanently disqualified from the program.[24] The three-judge district court, in language equally applicable to Item 35, rejected the claim that this federal statute is unconstitutionally vague:

The test in determining whether or not a statute is unconstitutionally vague is whether men of common intelligence must necessarily guess at its meaning. Due to the particular application of this statute to physicians and other practition-

---

denied, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975) ("in the course of professional practice"); *United States v. Collier*, 478 F.2d 268, 270–72 (5th Cir. 1973) (same); *Hoke v. Board of Medical Examiners*, 395 F.Supp. 357, 362 (W.D.N.C.1975) ("grossly immoral conduct, or . . . any unprofessional or dishonorable conduct unworthy of, and affecting, the practice of his profession"); *Friendship Medical Center, Ltd. v. Chicago Board of Health*, 367 F.Supp. 594, 606 (N.D.Ill.1973), *rev'd on other grounds*, 505 F.2d 1141 (7th Cir. 1974), *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975).

**18.** Valium (Diazepam) is a Schedule IV drug whose prescription is regulated by statute. N.Y. Pub. Health L. §§ 3306, 3331 (McKinney Supp.1975).

**19.** *See, e. g.*, 42 U.S.C. § 1320c et seq.; *see also* cases cited at n. 37 *infra*. In addition, New York State regulations apart from Item 35 apparently required plaintiff to keep adequate records on all patients for whom he submitted Medicaid claims. 18 N.Y.C.R.R. § 540.7(a)(6). One of the charges against plaintiff was that his records did not comply with this regulation.

**20.** *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973). *See Parker v. Levy*, 417 U.S. 733, 755–57, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *United States v. Chestnut*, 394 F.Supp. 581, 588 (S.D. N.Y.1975).

**21.** 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975), *aff'g*, 395 F.Supp. 125 (N.D.Ill.1975).

**22.** 42 U.S.C. § 1320c et seq.

**23.** 42 U.S.C. § 1320c–9(a)(1); *see also* 42 U.S.C. § 1320c–4(a)(1).

**24.** 42 U.S.C. §§ 1320c–7(a), 1320c–9. The determination whether professional services meet the standards is made initially by a Professional Standards Review Organization composed of physicians. 42 U.S.C. § 1320c–7. A physician has the right to appeal its determination to the Secretary of the Department of Health, Education and Welfare and have a hearing before the Secretary. 42 U.S.C. §§ 1320c–8(b), 1320c–9(b)(4). *See* 395 F.Supp. at 128–131.

ers, the Court must also consider whether members of the medical profession must necessarily guess at the meaning of phrases set forth in the statute, such as "medically necessary," "professionally recognized health care standards," and "proper care."

Although the Court recognizes that these phrases are not highly specific, the Court believes that the language of the challenged legislation is not impermissibly vague or uncertain. As the Supreme Court stated in *United States v. Petrillo,* 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947):

> . . . the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning when measured by common understanding and practices. The Constitution requires no more.

Plaintiffs' reliance on numerous decisions invalidating various criminal statutes on the grounds of vagueness is misplaced. The present statutory scheme does not impose criminal sanctions. Nor does it provide for severance from the medical profession for non-compliance. . . . Rather the instant legislation only sets forth conditions for being compensated by federal funds under the Medicare and Medicaid programs. . . .

Congress faced a difficult task in drafting this statute with sufficient specificity to give the physicians, practitioners and providers of health care service adequate notice of the new requirements of the law and at the same time to maintain enough flexibility to cover a variety of medical cases. In accomplishing this task Congress did not stray beyond the permissible boundaries of the Constitution.[25]

On direct appeal to the Supreme Court,[26] *Weinberger* was affirmed summarily.[27] This affirmance is a decision on the merits for the purpose of determining whether a substantial constitutional question exists that requires the convocation of a three-judge court.[28] The difference between the legislation under consideration in *Weinberger* and Item 35 in this case is so slight that the Court has no doubt that the *Weinberger* decision "leave[s] no room for the inference that the questions sought to be raised can be the subject of controversy."[29] Accordingly, the Court declines to convene a three-judge court to consider plaintiff's claim that Item 35 is unconstitutionally vague. This decision, of course, necessarily disposes of so much of plaintiff's motions for a preliminary injunction and summary judgment as rest on the grounds of vagueness.

■ Plaintiff's other grounds for seeking to enjoin the administrative hearing can be dealt with in fairly short order.[30]

25. 395 F.Supp. at 138.

26. *See* 28 U.S.C. § 1253.

27. 423 U.S. 975, 96 S.Ct. 388, 46 L.Ed.2d 299 (1975).

28. *Mercado v. Rockefeller,* 502 F.2d 666, 673 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975); *Doe v. Hodgson,* 478 F.2d 537 (2d Cir.), *cert. denied,* 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), *adhered to,* 500 F.2d 1206 (2d Cir. 1974). The Second Circuit's practice in this respect has been specifically approved by the Supreme Court. *Hicks v. Miranda,* 422 U.S. 332, 343–45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

29. *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973), *quoting Ex parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

30. These issues either do not raise any constitutional question at all or merely concern claims that state officials have acted unconstitutionally in the enforcement of an otherwise constitutional regulation; no three-judge court is required to decide them. *Johnson v. Harder,* 438 F.2d 7, 13 (2d Cir. 1971); *Burchette v. Dumpson,* 387 F.Supp. 812, 817–18 (E.D.N.Y. 1974); *cf. Allee v. Medrano,* 416 U.S. 802, 812, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974). To the extent the complaint raises non-constitutional claims jurisdiction is adequately founded on principles of pendent jurisdiction, *see Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman,* 397 U.S. 397, 402–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *United Mine Workers v. Gibbs,* 383 U.S. 715, 721–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and apparently upon diversity of citizenship as well.

It is well established that a preliminary injunction should not issue except

> upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.[31]

Plaintiff has failed to show a probability of success on the merits on any of his claims. First, he claims that the scheduled hearing would deny him due process of law because he has not received adequate notice of the charges against him and is therefore unable to prepare an adequate defense. However, what kind of notice is required to comport with due process of law depends upon the facts and circumstances of the particular case.[32] In this case plaintiff had a thorough discussion of the matter, and an examination of the challenged records, with the Deputy Executive Medical Director; he later received a letter, referred to above, setting forth the charges against him. In addition, since the institution of this suit he has received a 106-page bill of particulars identifying the patients with respect to whom unacceptable practices are alleged.

Moreover, it is clear from the correspondence between plaintiff's attorney and the defendants that plaintiff is well aware of what he is charged with and is able to defend himself; his grievance is actually that he does not feel that his actions constitute unacceptable practices. Under the facts of this case the requirement of due process of law is fulfilled.[33]

Plaintiff further claims that the hearing should be enjoined because Item 35, under which he alleges the defendants are proceeding against him, is void since it has not been properly filed with the Secretary of the State as required by the New York State Constitution.[34] Item 35 was superseded, before plaintiff was notified of his disqualification from Medicaid, by validly promulgated regulations.[35] Thus, insofar as plaintiff objects that the procedures followed in his case are illegal because of the lack of filing of Item 35 his claim is moot, since the notice of disqualification and abortive hearing all were authorized by the new regulation.[36] And, since the courts of New York State have held that the state has the inherent power, apart from any regulation, to police "the quality and the value of the services rendered" by physicians providing services under the Medicaid program,[37] the

**31.** *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir.1973) (emphasis in original); *see Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, at 442–443 (2d Cir. 1977).

**32.** *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Bell v. Burson*, 402 U.S. 535, 540, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Cafeteria & Restaurant Workers Local 473 v. McElroy*, 367 U.S. 886, 894–95, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 160-65, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

**33.** *See Woodbury v. McKinnon*, 447 F.2d 839, 843–44 (5th Cir. 1971); *cf. Simard v. Board of Educ.*, 473 F.2d 988, 994 (2d Cir. 1973); *Javits v. Stevens*, 382 F.Supp. 131, 138–39 (S.D.N.Y. 1974).

**34.** Art. 4, § 8 (McKinney 1969). *See Percy v. Brennan*, 384 F.Supp. 800, 813–14 (S.D.N.Y. 1974); *People v. Cull*, 10 N.Y.2d 123, 218 N.Y. S.2d 38, 176 N.E.2d 495 (1961).

**35.** 18 N.Y.C.R.R. Part 515, promulgated January 21, 1976.

**36.** *Pacific Molasses Co. v. FTC*, 356 F.2d 386, 390 n.10 (5th Cir. 1966); *Keystone Motor Express, Inc. v. United States*, 228 F.Supp. 793, 799–800 (S.D.W.Va.1964). In any event, plaintiff surely cannot object to being provided a hearing regardless of whether a valid regulation authorizes one.

**37.** *Matter of Fisher*, N.Y.L.J., May 27, 1969, at 2 (Sup.Ct.). *See Matter of Messana*, N.Y.L.J., May 5, 1976, at 8 (Sup.Ct.); *Fahey v. Whalen*, 84 Misc.2d 1040, 376 N.Y.S.2d 819 (Sup.Ct. 1975); *cf. Peterson v. Weinberger*, 508 F.2d 45, 50 (5th Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975). *See generally* pp. 211–212 *supra*. This proposition was also the apparent ground for the holding in plaintiff's state court case that

> "[t]o the extent petitioner argues that the administrative hearing was improperly initiated and that conducting it was without the respondents' jurisdiction, the argument is contrary to the decisional law on point.

filing of Item 35 was irrelevant to defendants' authority to proceed against plaintiff. Plaintiff in fact concedes in his brief that he does not dispute defendants' "authority to investigate alleged improper practices under Medicaid." Thus regardless of whether Item 35 was properly filed, the actions of defendants were not illegal. Finally, plaintiff's charges that he has been unfairly singled out for punishment are made in the most conclusory terms; he has not adduced a shred of evidence to support them. Thus, plaintiff has shown no probability of success on the merits.

▆ Nor has plaintiff shown any irreparable injury, which is a prerequisite to the grant of injunctive relief under either prong of the *Sonesta* standard.[38] Plaintiff is to be afforded a hearing on the charges; as noted above, the hearing provides all the procedural protections of a full adversary trial. All of the claims he advances in this action can be raised before the administrative hearing officer and upon judicial review after the administrative procedure is completed.[39] Because he has requested a hearing, plaintiff's disqualification has not yet become effective; depending upon the decision of the hearing examiner it may never become effective. Nor will an adverse decision deprive plaintiff of the right to earn a living by the practice of medicine. Moreover, although plaintiff will have to return to New York to attend the hearing this is because of his voluntary action in moving to Florida. Finally, his charges that he will suffer irreparable injury because of the alleged bias of the hearing examiner are frivolous. The mere fact that the examiner was ready to proceed with the hearing despite plaintiff's jurisdictional attack does not demonstrate bias, nor does the fact that he is named as a defendant in this case.[40] In short, plaintiff has not pointed to the possibility of any injury other than that normally associated with prosecuting an administrative appeal such as this one, which does not entitle him to injunctive relief.[41]

▆ Apart from the above, there is another reason to deny the requested injunctive relief altogether. Our Court of Appeals has recently suggested, in *McCune v. Frank*,[42] that state administrative proceedings are entitled to the same respect from federal courts as state judicial proceedings, and should therefore not be enjoined in the absence of a showing of "bad

---

(Matter of Fisher . . . Matter of Messana . . .). Indeed acceptance of his argument would result in his being denied an administrative hearing, or that he would be entitled to continue practice and receive Medicaid payments regardless of wrongdoing until a court determination on the charges." Since plaintiff specifically raised the question of Item 35's filing in the state court, and indeed said that was the "essential issue" in the case, the court's decision is res judicata on that point. *Lombard v. Board of Educ.*, 502 F.2d 631, 636–37 (2d Cir. 1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *Hanzimanolis v. Codd*, 404 F.Supp. 719 (S.D.N.Y.1975), *aff'd without opinion*, 538 F.2d 309 (2d Cir. 1976).

**38.** *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, at 441 n. 3 (2d Cir. 1977); *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976); *Applied Digital Data Systems, Inc. v. Milgo Electronic Corp.*, 425 F.Supp. 1145 at 1156 (S.D.N.Y.1977).

**39.** N.Y.C.P.L.R. § 7801 et seq. (McKinney 1963). *See Jerry v. Board of Educ.*, 44 A.D.2d 198, 202–03, 354 N.Y.S.2d 745, 749–50, *modi-fied on other grounds*, 35 N.Y.2d 534, 364 N.Y.S.2d 440, 324 N.E.2d 106 (1974); *Garry v. Kocialski*, 286 App.Div. 314, 142 N.Y.S.2d 622 (1955).

**40.** *See generally Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Ex parte American Steel Barrel Co.*, 230 U.S. 35, 43–44, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); *Chiarello v. Domenico Bus Service, Inc.*, 542 F.2d 883, 885 (2d Cir. 1976).

**41.** *See Ungar v. Isaias*, 336 F.Supp. 1233 (S.D.N.Y.1972); *cf. Younger v. Harris*, 401 U.S. 37, 46–47, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**42.** 521 F.2d 1152, 1157–59 (2d Cir. 1975). *See also Geiger v. Jenkins*, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), *aff'g*, 316 F.Supp. 370 (N.D.Ga.1970); *Anonymous v. Association of the Bar of the City of New York*, 515 F.2d 427 (2d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *cf. Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

faith, harassment, or any other unusual circumstance that would call for equitable relief."[43] This is especially true where, as here, plaintiff himself requested the very administrative hearing he now seeks to enjoin. Certainly the state's interest in this proceeding, which affects the health and safety of its citizens as well as the public fisc, is at least as great as its interest in the length of a policeman's hair, which was at issue in *McCune v. Frank*. By its regulations and by the procedures followed in this case the state is attempting to protect its citizens while at the same time affording plaintiff due process of law. To this date its efforts have been frustrated by this litigation. The simple fact is that all plaintiff's constitutional and statutory claims can be presented in the administrative proceeding. Plaintiff has made no showing of any extraordinary circumstances that require a court of equity to intervene on his behalf and abort the state's attempts to resolve these matters in an orderly and expeditious fashion.[44] Thus, plaintiff's claim for injunctive relief should be dismissed altogether.[45]

Finally, plaintiff's claim for damages must be dismissed without prejudice as premature. Until the administrative proceedings are concluded it is "simply impossible to make any reasoned evaluation" of plaintiff's claim that he will be denied due process, or to calculate the damage he will suffer thereby.[46]

Accordingly, the complaint is dismissed in its entirety without prejudice.

---

**43.** *Younger v. Harris*, 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971).

**44.** Plaintiff's claim that the rule of *Younger v. Harris, supra,* does not apply because of the bias of the hearing examiner, *see Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), fails because he has shown no bias. *See* p. 214 *supra.*

**45.** For the same reasons, plaintiff's claims for declaratory relief should also be dismissed. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

**46.** *Martin v. Merola*, 532 F.2d 191, 194 (2d Cir. 1976).