Edward F. McLaughlin, J.
Petitioner brings this motion pursuant to CPLR article 78 to obtain injunctive relief restraining respondents from deducting some $39,388 in medicaid overpayments received by petitioner between 1971 and 1974 from current medicaid reimbursement payments being made to petitioner by respondents. Petitioner further seeks to compel respondents, pursuant to article 28 of the Public Health Law to perform the alleged ministerial function of paying petitioner full medicaid reimbursement payments currently due petitioner’s nursing home facility.
Petitioner is the operator of the Castle Rest Nursing Home, a privately operated nursing home located in Syracuse, New York, which cares for medicaid patients. Provider agreements between petitioner and the New York Department of Social Services (Berger) provide for reimbursement to petitioner for medicaid patients. On or about May 26, 1975, the commissioner established petitioner’s reimbursement rate for the period of January 1, 1975 through December 31, 1975 pursuant to article 28 of the Public Health Law and the order of this court signed by the Honorable James Gibson on the 24th day of April, 1975.
On or about June 5, 1975, the Commissioner of Social Services of Onondaga County (Lascaris) advised petitioner that as a result of an audit conducted by the New York State Department of Health, petitioner had been overpaid $39,988 in medicaid reimbursements during the period of July 1, 1971 through December 31, 1974. The audit had been conducted prior to 1974 pursuant to section 86.8 of the Administrative Rules and Regulations of the Department of Health (10 NYCRR 86.8). On March 27, 1974, petitioner was advised by letter of the results of the audit. In said letter, petitioner was further advised that the adjustments contained therein would be final unless protested by petitioner within 30 days. Petitioner did not protest the audit results within that time and does not do so on this motion.
Pursuant to his general powers, the State Commissioner of Social Services (Berger) in July, 1973 authorized and instructed local Commissioners of Social Services (including Lascaris) to recover from nursing homes, overpayments based on revised reimbursement rates or Department of Health audit findings.
In his June 5, 1975 letter to petitioner, Lascaris requested remittance of the overpayment to petitioner and advised that, *1042 if it were not made, it would be subtracted from future payments. Thereafter, when repayment was not made, respondent Lascaris commenced in July, 1975 to deduct one quarter of the overpayment from current reimbursement payments to be made in the next four successive months. Respondents contend that such deductions are made only after computing the gross amount currently due petitioner based on 1975 reimbursement rates and that said rates have not been altered, modified or amended in any way.
Petitioner contends, inter alia, that he is being denied his constitutional rights in the nature of deprivation of property by diminishment of his medicaid reimbursement payments to offset the prior overpayments. In addition, he argues that the action of the respondents effectively varies and modifies the rates established for him for 1975 contrary to law.
Essentially the petitioner is asking the court to mandate that the State- continue making payments to petitioner even though he undeniably owes the State a considerable sum from prior overpayments. In support of his position, petitioner argues that there exists no statutory authority which allows the State and its local agencies to recoup overpayments by deduction from current debts. On the other side of the coin, petitioner argues that the State must continue to pay full medicaid reimbursements pursuant to the Public Health Law.
Neither argument of petitioner can be logically supported. Under the Public Health Law and the regulations of the Commissioner of Health, petitioner has no statutory or constitutional right to State medicaid payments except insofar as he complies with the commissioner’s regulations and then only in amount as equals patients’ allowable cost of care. Under section 86.8 of the regulations, the Department of Health is authorized to conduct such audits as necessary to determine allowable costs and to satisfy its own needs. In the case at bar, the audit conducted by the State established disallowable costs and the resultant overpayment to petitioner. Petitioner did not appeal the findings of the audit.
To require the State, at this point, to continue making payments without recovery of moneys paid previously would thwart the intent of both the Public Health Law and the regulations of the Department of Health which are designed to enable the Commissioner of Health to regulate and control such matters administratively. Petitioner, in fact, argues that it is a ministerial duty of the commissioner which he seeks to *1043 enforce; to wit, full payment of current medicaid reimbursements. The same argument may effectively be used, in a more applicable sense, for the principle that the commissioner is properly performing his ministerial duties by recouping his losses due to prior overpayments. "It is well settled that the sovereign has inherent authority to recover sums illegally or erroneously paid, and that it cannot be estopped from doing so by the mistakes of its officers or agents.” (Mount Sinai Hosp. of Greater Miami v Weinberger, 376 FSupp 1099, 1126, citing Fansteel Metallurgical Corp. v United States, 172 FSupp 268, 270-271; United States v Wurts, 303 US 414, 415; United States v Carr, 132 US 644, 651; United States v Barlow, 132 US 271, 281-282; Federal Crop Ins. Corp. v Merrill, 332 US 380, 383-384; Posey v United States, 449 F2d 228, 234; Heidt v United States, 56 F2d 559, 560, cert den 287 US 601; Wells v Johnston, 171 NY 324; People v Journal Co., 213 NY 1.)
A thorough review of applicable New York State law brings to light no statutory authority denying the respondent commissioners the power of recouping overpayments. It does, however, quite clearly indicate legislative intent to regulate payments made under the Public Health Law in the interests of the public good. It would not serve the public or the State’s interest in any respect to require it to continue making payments while denying it the right to recoup erroneous payments. Such a ruling would merely serve to further deplete the overburdened coffers of State agencies.
This court agrees that the issues raised in this case would be much more easily disposed of were the regulations of the commissioner to include a section specifically pertaining to administrative retroactive adjustment for overpayments. Nonetheless, in the absence of any section either specifically authorizing or denying such power of adjustment, this court recognizes the common-law and equitable right of the government to collect for an undisputed amount of overpayment by withholding money due. This procedure is recognized in the Workmen’s Compensation Law and Disability Benefits Law (Workmen’s Compensation Law,. art 9) of the State of New York as well as under Federal law. The court will not permit the inequitable result of compelling the State to continue paying where it has already overpaid and in effect paid in advance.
Petitioner’s argument that the actions of respondents alter the medicaid reimbursements rates established for him in *1044 1975 is likewise. without merit. The commissioner has determined the 1975 rate and is establishing the amount due petitioner based thereon. Only after the current amount due is determined, is deduction made for one fourth of the prior overpayment for four successive months. No alteration in the current 1975 reimbursement rate is involved. Furthermore, the reimbursement moneys do not become property of petitioner until paid after determination that the regulations of the Department of Health have been complied with. (Chemical Bank N. Y. Trust Co. v State of New York, 27 AD2d 427.) So long as there exists a prior overpayment determined as a result of an authorized audit, petitioner after due notice has not cured his earlier noncompliance with the regulations concerning a review of the audit. He thus has not shown a statutory or constitutional right to the moneys he seeks to be currently paid. Thus, without establishing his right to full current payments, he cannot argue that he has been deprived of his property without due process of law.
The petitioner’s motion is denied.