**In re Sidney GREENWALD d/b/a Maple Leaf Nursing Home, Debtor.**

**Bankruptcy No. 81 B 20402.**
**82 Adv. 6101.**

United States Bankruptcy Court,
S.D. New York.

Sept. 26, 1983.

Marvin L. Tenzer, P.C., New York City, for Sidney Greenwald, d/b/a Maple Leaf Nursing Home, plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for David Axelrod, M.D., et al., defendants; Gerald Slotnik, Asst. Atty. Gen., New York City, of counsel.

## DECISION ON SUMMARY JUDGMENT RE: REIMBURSEMENT OF HEALTH CARE BENEFITS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The motion and cross-motion for summary judgment in this case involve the entitlement of the Chapter 11 debtor, the operator of a residential health care facility, to reimbursement from the New York State Commissioner of the Department of Health under Title XIX of the Federal Social Security Act, 42 U.S.C. §§ 1396a–1396p (Supp. V 1981) (the "Medicaid Act"). The debtor, Sidney Greenwald d/b/a Maple Leaf Nursing Home, commenced an adversary proceeding against the Commissioner seeking two forms of Medicaid reimbursement allegedly owing for the years 1973 and 1975. The Commissioner has asserted an array of defenses consisting of eleventh amendment immunity, expiration of applicable statutes of limitation, failure to exhaust administrative remedies and the right to summary judgment on the merits.

### Medicaid Reimbursement in New York State

Under the Medicaid Act, the federal government grants to the states a percentage of the funding required to provide medical care to patients unable to afford it. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). In New York State, the State and local governments furnish the remainder of the funding. Reimbursement rates for residential health care facilities similar to that of the debtor are promulgated by the Department of Health ("DOH").

The methodology employed in fixing reimbursement rates under the state scheme is generally prospective in nature. Essentially, computation of the rates is based on the actual costs incurred by a facility during an earlier "base" period. To be allowable, these costs must be reasonably related to patient care and within various cost ceilings. The allowed costs are then adjusted by a "trend factor" to reflect inflation because the base period is an attempt to approximate more accurately expenses to be incurred during the rate year. A factor for capital costs is then applied to arrive at a uniform average *per diem* reimbursement rate for each day of care rendered to a Medicaid eligible patient.[1]

Base year cost reports, submitted by a facility seeking Medicaid reimbursement, are subject to subsequent audit by DOH. *See* N.Y.Pub. Health Law § 2803(1)(b)(ii) (McKinney Supp. 1982–1983); 10 N.Y.C.R.R. § 86–2.7 (1983). A retroactive rate adjustment may be sought if a cost report audit so necessitates, but the audit is final unless the facility requests bureau review within 30 days of receiving an audit report. 10 N.Y.C.R.R. § 86–2.7(e). A second level administrative remedy is provided by appealing from the bureau review within 30 days of written notification of its outcome. 10 N.Y.C.R.R. § 86–2.7(f).

### The Salary Cost Appeal

The complaint demands reimbursement for labor cost increases that the facility incurred in 1975. DOH established 1975 reimbursement rates for the debtor's facility from which the debtor took a timely administrative appeal pursuant to 10 N.Y.C.R.R. § 86–2.14(b) (authorizing administrative appeal of reimbursement rate within 120 days of rate notification). The appeal was based upon higher labor costs the facility incurred as a result of a collective bargaining agreement it entered into with its employees. This agreement had not been considered by DOH when it initially fixed the reimbursement rate. DOH's Board of Audit and Investigation later confirmed the

1. The methodology used in fixing Medicaid reimbursement rates is contained in Part 86–2 of the Rules and Regulations prescribed by the Commissioner of the Department of Health. *See* 10 N.Y.C.R.R. § 86–2.10–.12 (1983).

escalated labor costs and increased the 1975 reimbursement amount by $265,298. A further audit caused DOH to reduce this figure to $250,934.

The dispute which is the subject of the present litigation arose when DOH refused to pay the additional reimbursement to the debtor pending additional audits of the facility instituted by the Office of the Special Prosecutor for Medicaid Fraud ("OSP") for 1973–74 and by DOH for 1975–76. The OSP audits were later turned over to DOH and expanded to cover 1977–79. From these audits DOH expected to uncover substantial reimbursement overpayments to the debtor and disclosed its intention to consolidate the salary appeal with the audit proceedings.[2]

In light of the denial of the debtor's demand for the 1975 reimbursement pending the audits, the debtor commenced an action against the Commissioner of the DOH in the United States District Court for the Southern District of New York challenging the consolidation which held in abeyance the salary reimbursement. *Greenwald v. Axelrod*, 80 Civ. 2396 (S.D. N.Y. May 27, 1981). This action was subsequently dismissed upon the court's finding that "in the absence of bad faith or dilatoriness ... the procedure of consolidating the salary appeal and the base year audits [is] reasonable under the circumstances of this case and not violative of applicable statutes." *Id.,* slip op. at 4–5. In June 1981, after the district court action was dismissed, the 1973–74 OSP audit and bureau review of that audit conducted pursuant to 10 N.Y.C.R.R. § 86–2.7(a) were completed. The debtor followed with a second level administrative appeal of the audit in the form of an administrative hearing. *See* 10 N.Y.C.R.R. § 86–2.7(d). The 1975–79 audit is also final and bureau review of the audit for this period has been timely requested.

More than two years have elapsed since the district court approved consolidation of the salary appeal and audits. A portion of these audit proceedings has now been pending for over five years. Each party blames the other for the delay. The debtor urges the court to find "bad faith and dilatoriness" on the part of DOH so that consolidation of the salary appeal is no longer "reasonable" as within the meaning of the district court's decision. Moreover, the debtor maintains that withholding of its 1975 reimbursement allowance contravenes the Medicaid Act, the Supremacy and Due Process Clauses of the United States Constitution, gives rise to a cause of action under 42 U.S.C. § 1983, and therefore excuses exhaustion of administrative remedies under recognized exceptions to the doctrine.

On the other hand, DOH declares it is entitled to summary judgment on the salary cost issue because the debtor has not availed itself of all administrative remedies. DOH accuses the debtor of being uncooperative during the audits and responsible for the delays.

### Start-up and Group Average Costs

The debtor also seeks reimbursement for start-up costs and what it labels "group average costs" incurred during 1973, the year in which the debtor's facility was established. Some time prior to January 22, 1973, DOH *licensed* and *certified* the debtor's facility as a 120 bed residential health care facility. However, approval for occupancy was granted in three stages; forty bed approval was given in January 1973, 80 beds were approved on February 1, 1973 and 120 bed approval was extended on March 9, 1973. Thus, although the original license to operate was issued in January 1973, the debtor could not fill 120 beds until March 9, 1973 when complete approval was obtained. This delay in approving the facil-

---

2. It appears that the primary motive for consolidating the salary appeal with the audits derived from a pending application to transfer ownership of the nursing home from the debtor to Northern Residential Health Care Facility, Inc. Such a transfer would have precluded DOH from recouping the past overpayments from the facility's future reimbursement. The proposed sale was consummated in April 1981. Overpayments to the debtor are estimated by DOH at $911,549.

ity for 120 bed occupancy gave rise to the start-up cost litigation.

The gravamen of the debtor's start-up cost appeal is that the State has refused to reimburse the debtor for start-up costs incurred after the original license was issued but before the approval of a 120 bed facility. The debtor submitted a cost report seeking reimbursement for start-up costs incurred until the third stage of approval was granted by DOH. DOH denied reimbursement for start-up expenditures made after admission of the first patient to the facility. The federal regulation relied upon by DOH in disallowing this portion of the start-up cost application provides in pertinent part:

> Start-up costs are incurred from the time preparation begins on a newly constructed or purchased building, wing, floor, unit, or expansion thereof *to the time the first patient whether Medicare or non-Medicare, is admitted for treatment,* or, where the start-up costs apply only to nonrevenue-producing patient care functions or non-allowable functions, to the time the areas are used for their intended purposes.

Federal Medicare Reimbursement Manual § 2132.2 (Health Insurance Manual 15) (emphasis added). The debtor's group rate appeal is also connected to the gradual approval scheme applied by DOH. Because the facility could not operate at full capacity until March 1973, the debtor claims that its *per diem* patient costs were higher than they would have been if the facility was serving 120 patients. DOH refused to reimburse the facility for its actual costs during the forty and eighty bed stages, but instead used a rate based on ninety percent occupancy of the 120 bed facility.[3]

The judicial contest concerning the 1973 start-up cost and group rate reimbursement [hereinafter referred to as the "start-up cost issue"] arose in a procedurally oblique manner. The debtor first objected to the start-up cost issue in a letter dated October 10, 1977 which served as a first level appeal of the denied 1973 reimbursement. This appeal was denied approximately one year later on October 24, 1978. DOH focuses on this latter date as the operative point commencing the period in which the debtor could have taken a second level administrative appeal on the road to exhausting its administrative remedies. *See* 10 N.Y.C. R.R. § 86–2.14(b)(1) (prescribing administrative hearing as a second level appeal if requested within thirty days after denial of first appeal). Alternatively, DOH contends that the four month statute of limitation pertaining to an Article 78 proceeding challenging the DOH action also commenced on October 24, 1978.

Rather than request an administrative hearing or commence an Article 78 proceeding (if exhaustion of administrative remedies was not required), the debtor took no action until June 5, 1980 when it instituted a district court action against DOH seeking the 1973 reimbursement. *See Greenwald v. Axelrod,* 80 Civ. 3079 (S.D.N.Y. May 27, 1981). In that action, the debtor's financial consultant, Marvin Neiman, represented to the court that the start-up cost issue was then pending in the bureau review of the 1973–74 audits of the facility. Relying upon this representation, the district court dismissed the action without prejudice to refiling "in view of the pendency of [the start-up cost] issue before the state administrative agency." *Id.,* slip op. at 3. Although the court did not expressly state that the plaintiff failed to exhaust administrative remedies, it labeled the action "premature," noting that "the Department of Health, pursuant to its established policy, has permitted plaintiffs to raise the start-up cost issue in connection with its pending audit appeal, and currently has the start-up cost issue before it." *Id.*

It is now apparent that the start-up cost issue was never raised in the audit proceedings. DOH refused to allow the issue to be

---

**3.** The per diem rates for the debtor's new facility consisted of two components, a capital cost component reflecting the capital expense of constructing the facility and an operational component computed pursuant to a "group average." The debtor's objection is directed to the second component which was allegedly based on ninety percent occupancy.

raised by the debtor during bureau review of the audits pursuant to its policy and practice precluding the raising of "new matter" at this stage. DOH now moves for summary judgment dismissing the start-up cost issue on the ground that the debtor failed to exhaust its administrative remedies when it did not appeal further from the denial of its first level appeal in October 1978. The time to file an appeal has now expired. Alternatively, DOH claims that the statute of limitation for making a judicial challenge to the state administrative action has long expired under Section 217 of the New York Civil Practice Law and Rules.

### Issues Presented

The issues to be decided on these motions for summary judgment are: 1) Whether DOH has been dilatory in finalizing bureau review of the pending audits so that consolidation of the salary cost appeal with the audits is no longer reasonable; 2) Whether the debtor has exhausted administrative remedies in respect to the 1975 salary reimbursement appeal; and 3) Whether the doctrine of exhaustion or applicable statutes of limitation bar the claim for start-up costs.

### DISCUSSION

■ These motions are before the bankruptcy court pursuant to an Emergency Resolution promulgated by the judges of the United States District Court for the Southern District of New York. The Resolution was adopted to continue the orderly conduct of the business of the bankruptcy court until Congress enacts remedial legislation to cure the constitutional defect in the court's structure found by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), or until March 31, 1984, whichever first occurs. *See* Emergency Resolu-

tion § (a) NYLJ, Sept. 30, 1982 at 36, col. 1. As defined by the Resolution, a "related proceeding" is one which could have been brought in a district or state court in the absence of a petition in bankruptcy. *Id.* § (d)(3)(A). This adversary proceeding, in which the debtor seeks Medicaid reimbursement, could have been brought in either court in the absence of the debtor having filed a petition under the Bankruptcy Code, and is therefore a related proceeding. In a related proceeding, "the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge." *Id.* § (d)(3)(B). The parties did not consent to disposition of this case by the bankruptcy court and the district court directed that findings, conclusions and a proposed judgment be submitted pursuant to the Resolution. The findings submitted by this court consist of those facts that are undisputed by the parties in making their motions for summary judgment.

■ Summary judgment is an extraordinary remedy which should be granted with great caution and only where it clearly appears that there is no genuine issue as to material fact to be tried. *See, e.g., Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir.1975). As the fifth circuit has dramatically characterized it, summary judgment under Fed.R.Civ.P. 56(c)[4] "is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 612 (5th Cir.1967). The submission by both parties to a lawsuit that no genuine issue as to material fact exists, as is the case when both move for summary judgment, does not necessarily oblige the court to grant judg-

---

**4.** Fed.R.Civ.P. 56(c) is incorporated in bankruptcy adversary proceedings by Bankruptcy Rule 7056. Fed.R.Bankr.P. 7056, 11 U.S.C.A. (West Supp.1983). It provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

ment as a matter of law for one party or the other. *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981); *Home Insurance Co. v. Aetna Casualty & Surety Co.,* 528 F.2d 1388, 1390 (2d Cir. 1976).

■ The first question raised involves the continued delay in finalizing bureau review of the DOH audits. In its May 1981 opinion, the district court approved consolidation of the 1975 salary appeal with the State's ongoing audit proceedings. The court dismissed the debtor's challenge to the consolidation "without prejudice to re-filing after completion of the consolidated audits *or more substantial delays and a failure by the state to provide a procedure for challenging such delays.*" *Greenwald v. Axelrod,* 80 Civ. 2396, slip op. at 5 (S.D.N.Y. May 29, 1981). Severing the salary appeal from the uncompleted audits would seem to be the only course to follow at this late stage. More than two years have elapsed since the district court warned about further delays. DOH did not refute that long delays in processing the audits have occurred. It has offered no justification for the delays nor has it provided "a procedure for challenging such delays." *Id.*[5] Because no genuine issue of material fact is raised concerning either the existence of or lack of justification for the delays, this court recommends that the district court order severance of the salary appeal from the audits, to which the debtor is entitled as a matter of law.

After the severance of the salary appeal, it remains to be decided whether the debtor has a present right to the additional 1975 reimbursement of $250,934. It is undisput-ed that DOH ruled in favor of the debtor in the administrative proceedings setting the debtor's 1975 reimbursement rate. DOH argues that the claim for these funds is nevertheless barred by the eleventh amendment and the doctrine requiring exhaustion of administrative remedies.[6]

■ DOH's immunity defense is without merit. Health Care Financing, a department within DOH, filed on behalf of New York State a proof of claim against the debtor in the amount of $911,549. The debtor now seeks to offset against this claim the $250,934 unpaid reimbursement for 1975. Although under the eleventh amendment states are immunized from suits "seeking to impose a liability which must be paid from public funds in the state treasury," *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), the Bankruptcy Code allows for the type of offset sought by the debtor in this case. Section 106(b) of the Code states: "There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." 11 U.S.C. § 106(b) (1982). Under this provision, there is no requirement that the estate's claim arise out of the same transaction or occurrence as the governmental unit's claim. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 29–30 (1978); *reprinted in* 1978 Code Cong. & Ad.News 5787, 5815–16, 6274; *cf.* 11 U.S.C. § 106(a) (1982) (affirmative recovery against governmental unit only allowed if estate's claim arises out of same transaction or occurrence as government's claim). Therefore, by filing its claim

---

**5.** The court acknowledges DOH's undisputed contention that the debtor requested an adjournment of the audit review proceedings for approximately a one month period. This fact standing alone does not excuse the long delays in finalizing the audits proceedings. Particularly noteworthy is the span of almost eighteen months between the time bureau review of the 1973–74 audits was completed and the date set for an administrative hearing regarding these audits.

DOH offered a second unsatisfactory explanation for the delays. This consisted of a com-plaint that the debtor once failed to comply with a request for records needed to conduct the 1973–74 audits. DOH overlooks that these audits were completed in 1978, at which time they were under bureau review. Insofar as the delays at issue in this case are those which occurred after dismissal of the district court action this explanation has little relevance and raises no genuine issue as to material facts.

**6.** DOH raised no statute of limitation defense to the salary appeal.

against the debtor for $911,549, DOH waived its immunity from offset of the $250,934 the debtor seeks as unpaid Medicaid reimbursement for 1975.

█ DOH's exhaustion defense is also no bar to the debtor's claim. If the salary appeal is severed from the pending audits, there would be no administrative steps remaining for the debtor to undertake. *In Greenwald v. Axelrod,* 80 Civ. 2396 (S.D. N.Y. May 31, 1981), the district court determined that neither the Medicaid Act nor federal regulations contained provisions governing consolidation of audits, but that they deferred to the states to devise such administrative methods. *Id.,* slip op. at 4–5. It appears that what was in 1981 a reasonable administrative consolidation, is no longer justifiable after a long, unexplained delay in completing the audits. The 1975 reimbursement claim should now be treated independently of all other administrative proceedings.

A review of the 1975 salary appeal reveals that the debtor has fully exhausted its administrative remedies and is now entitled to setoff against the claim filed by the State of New York. It is undisputed that the debtor took a timely appeal from its 1975 reimbursement rate. Indeed, the State sustained the appeal and awarded the debtor an additional $250,934. At this stage, administrative procedures were exhausted and were revived only when the district court approved consolidation, requiring the holding in abeyance of the 1975 reimbursement until the audits were completed. Since continued consolidation is no longer justifiable, administrative proceedings relating to the 1975 reimbursement have now terminated. Accordingly, the district court should rule that the debtor is entitled to its unpaid Medicaid reimbursement for 1975, as has been previously awarded by DOH, and that it may offset

this amount against the State's claim filed against the estate.[7]

█ The next inquiry presented in this case relates to the debtor's right to start-up costs and unreimbursed 1973 patient care expenses. DOH asserted several defenses to this claim, including the expiration of applicable statutes of limitation and the debtor's failure to exhaust available administrative remedies. The debtor urges the court to accept as res judicata a prior district court decision disposing of the start-up cost issue in which these defenses asserted by the State were allegedly rejected. Res judicata effect is said to arise from the characterization of the prior action as premature "[i]n view of the pendency of the [start-up cost] issue before the state administrative agency." *Greenwald v. Axelrod,* 80 Civ. 3079, slip op. at 3 (S.D.N.Y. May 27, 1981). The State alleges that the start-up cost issue was not raised at the initiation of the audits. The debtor did not dispute this allegation. Established DOH policy precluded introduction of this "new matter" upon bureau review of the audits. Furthermore, the State points out that the debtor never exercised its right to a second level administrative appeal after it was denied its first appeal filed with DOH in 1978. It is somewhat disingenuous of the debtor to offer the district court opinion as res judicata that it exhausted its administrative remedies when its own representative misinformed the court that the start-up cost issue was pending in the audit. The debtor should not be allowed to capitalize on its own misinformation in such a fashion. Finally, the court notes that the debtor did not avail itself of two opportunities to pursue administrative relief; first, in 1978 when it overpassed an administrative appeal, and second, when it did not raise the start-up cost issue during the audits. Where a plaintiff fails to utilize available

---

**7.** DOH further argues that the 1975 additional reimbursement should not be judicially approved at this juncture because a portion of the alleged overpayments to the debtor as determined by the audits could be recouped from this amount. The simple response to this contention is that there will be no payment of the Medicaid reimbursement made to the debtor, but rather an offset against the claim filed by DOH against the estate. Thus the asserted right of recoupment coincides with Code section 106(b) in that the State's claim is reduced by the 1975 reimbursement award due the debtor.

administrative remedies in this manner, an award of summary judgment dismissing the action is appropriate. *E.g., Blake v. Piel,* 544 F.2d 831 (5th Cir.1977).

■ Even if the doctrine of exhaustion did not bar the start-up cost appeal, the statutes of limitation governing the appeal would preclude it. Under the administrative scheme, the debtor had thirty days from October 24, 1978 to appeal from the denial of its application for additional start-up reimbursement. *See* 10 N.Y.C.R.R. 86–2.14(b)(1). If the debtor felt that for some reason it was excused from pursuing this administrative relief, and could invoke judicial review instead, the statute of limitation governing the case is four months. This is the period provided by section 217 of the New York Civil Practice Law and Rules which applies to judicial challenges to action taken by the state or local government. *See* N.Y.Civ.Prac.Law ("CPLR") § 217 (McKinney 1981). The courts of New York have held this statute of limitation applicable to suits against Medicaid providers. *See Holliswood Care Center v. Whalen,* 86 A.D.2d 904, 448 N.Y.S.2d 265 (3d Dept. 1982), *modified,* 58 N.Y.2d 1001, 461 N.Y. S.2d 1009, 448 N.E.2d 794 (1983); *Klein v. Axelrod,* 81 A.D.2d 935, 439 N.Y.S.2d 510 (3d Dept.), *aff'd.* 54 N.Y.2d 818, 443 N.Y. S.2d 653, 427 N.E.2d 950 (1981).

The facts in *Klein* are strikingly similar to those presented herein. In *Klein,* the plaintiff was also a residential health care facility that was a Chapter 11 debtor. The plaintiff applied for and was denied an upward Medicaid reimbursement adjustment. Like the debtor's denial in the instant case, this first level appeal was rejected by a letter similarly dated October 24, 1978. No second level appeal was taken. Instead, the plaintiff commenced a state court proceeding which was dismissed as untimely commenced. In applying the four month statute of limitation set forth in CPLR § 217, the court held that "an article 78 proceed-

ing is the proper procedural vehicle for challenging 'individualized rates established for a particular litigant'. CPLR 217 is, therefore, the governing Statute of Limitations and hence this proceeding is time barred." *Klein v. Axelrod,* 81 A.D.2d at 935, 439 N.Y.S.2d at 512 (quoting *Solnick v. Whalen,* 49 N.Y.2d 224, 231, 425 N.Y.S.2d 68, 401 N.E.2d 190 (1980)).[8]

Under CPLR § 217, the debtor had until February 24, 1978 to commence a judicial challenge to DOH's denial of the start-up costs sought. No action was taken until 1980 when a district court action was commenced. That action was dismissed on the ground that the debtor had not exhausted administrative remedies based on the misinformation supplied by the debtor as discussed above. Neither the district court action nor the instant action was timely commenced and the district court should dismiss this part of the complaint as untimely. Alternatively, the start-up cost appeal should be dismissed because the debtor did not exhaust administrative remedies.

### CONCLUSIONS OF LAW

1. Due to extensive, unexplained delays in processing and finalizing audits of the debtor's facility, consolidation of the debtor's salary appeal with the audits is no longer reasonable. The 1975 salary appeal should therefore be severed from the audits.

2. DOH filed a proof of claim against the debtor in an amount exceeding the salary reimbursement sought by the debtor. To the extent that the debtor is entitled to an offset under Bankruptcy Code § 106(b), the State of New York is not protected by sovereign immunity under the eleventh amendment.

3. There are no administrative remedies remaining to be pursued by the debtor in the salary appeal. Consolidation of the audits and salary appeal was judicially or-

---

**8.** *Solnick* rejected a facility's attempt to circumvent CPLR § 217 by couching a complaint as one for declaratory relief which would invoke a six-year statute of limitation. 49 N.Y.2d at 230–31, 425 N.Y.S.2d 68, 401 N.E.2d 190.

Likewise, that part of the debtor's complaint seeking a declaratory judgment as to the start-up cost issue is governed not by the six year period, but by CPLR § 217.

dered and not required by statute or regulations of DOH. That consolidation should no longer continue under the court order and no administrative proceedings remain as to the salary appeal.

4. The debtor's claim for additional start-up cost reimbursement is barred by its failure to exhaust administrative remedies.

5. The start-up cost appeal is also time barred under 10 N.Y.C.R.R. 86–2.14(b)(1) and New York CPLR § 217.

The proposed judgment of this court is to sever the salary appeal and allow an offset in the amount of $250,934 against the State's proof of claim for $911,549. The debtor's claim for additional start-up and group average reimbursement should be dismissed.

Submit judgment for signature by the District Court.