**In re Sidney GREENWALD d/b/a Maple Leaf Nursing Home, debtor in possession, Debtor.**

**Sidney GREENWALD d/b/a Maple Leaf Nursing Home, debtor in possession, Plaintiff-Appellant,**

**v.**

**David AXELROD, M.D., as Commissioner of the New York State Department of Health, Barbara Blum, as Commissioner of the New York State Department of Social Services, C. Mark Lawton, as Budget Director of the State of New York, James Krauskopf, as Commissioner of New York City Department of Social Services, Charles Bates, as Commissioner of the Westchester County Department of Social Services, Joseph D'Elia, as Commissioner of the Nassau County Department of Social Services, Shirley Harvey-Cook, as Commissioner of the Orange County Department of Social Services, John Battistoni, as Commissioner of the Dutchess County Department of Social Services, and Noah Weinberg, as Commissioner of the Rockland County Department of Social Services, Defendants-Appellees.**

**No. 84 Civ. 0083 (RLC).**

United States District Court, S.D. New York.

Oct. 29, 1984.

See also, Bkrtcy., 34 B.R. 954.

Marvin L. Tenzer, P.C., New York City, for plaintiff-appellant; Marvin L. Tenzer, Scott B. Lunin, David J. Larkin, Jr., New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants-appellees; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Maryellen Weinberg, Gerald Slotnik, Asst. Attys. Gen., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Sidney Greenwald, doing business as Maple Leaf Nursing Home, seeks additional reimbursement from the New York State Department of Health ("DOH") under Medicaid, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396a–1396p.[1] He also seeks a declaration that defendants' failure to reimburse him properly violated his due process and equal protection rights as well as federal (Medicaid) and New York (Public Health) laws. Both plaintiff and defendants have filed motions for summary judgment.

The bankruptcy court heard these motions pursuant to an Emergency Resolution promulgated in this District,[2] see Emergency Resolution § (b), N.Y.L.J., Sept. 30, 1982 at 36, col. 1, and plaintiff now appeals from the Bankruptcy Court's decision, 33 B.R. 607, rehearing denied, 34 B.R. 952. Id. at § (c)(3). The main issue is whether plaintiff can maintain his action or whether, as defendants contend, it must be dismissed due to plaintiff's failure to pursue appropriate administrative remedies and to bring this suit in a timely manner. As explained below, this issue is resolved in plaintiff's favor. He has stated a valid cause of action pursuant to 42 U.S.C. § 1983, thus overcoming defendants' arguments for dismissal. However, summary judgment is granted in part to defendants on the constitutional claims. It is denied to both parties on the statutory claim as material issues of fact remain with respect to the merits of that claim.

### The Salary Appeal

1. *Background*

The complaint embodies claims that plaintiff first raised in 1975. By letter, in December of that year, plaintiff filed an administrative appeal with DOH requesting an increase in his reimbursement rates under Medicaid for labor cost increments incurred in 1975.[3] (Complaint ¶ 69). These costs had not been considered by DOH when it initially set the reimbursement rate. Although, as a result of the appeal,

---

1. Named as defendants in this action are David Axelrod, as Commissioner of the New York State Department of Health, Barbara Blum as Commissioner of the New York State Department of Social Services, C. Mark Lawton, as Budget Director of the State of New York. Plaintiff contends that defendants are the chief state officials responsible for reimbursement to Medicaid providers participating in the Medicaid program. Medicaid was designed as a joint state and federal program to provide medical care to those who would not otherwise be able to afford such care. Under the terms of the Medicaid statute, the federal government provides a percentage participation in the funding. In New York, responsibility for the remaining monies is divided between the state and local governments. (Gormley Aff. ¶ 4).

2. On July 1, 1981, an involuntary petition in bankruptcy was filed against plaintiff, which proceedings were thereafter converted to proceedings under Chapter 11 of the Bankruptcy Code. An order for relief under Chapter 7 was entered on August 12, 1981.

3. Pursuant to Part 86 of the rules and regulations of the Department of Health ("DOH"), 10(a) NYCRR, reimbursement rates for a residential health care facility rendering services to Medicaid-eligible patients are computed on a prospective basis utilizing "allowable costs" incurred by the facility during a prior period (i.e., a base period), which are limited by cost ceilings computed by DOH and are then "trended" forward to account for projected inflation. (Complaint, ¶ 20; Gormley Aff. ¶ 5).

DOH eventually confirmed that $250,000 [4] was owed to plaintiff-debtor, it determined that reimbursement should be withheld pending completion of two audits covering plaintiff's 1973–74 and 1975–76 cost reports.[5] This decision was communicated to plaintiff by letter in 1978. (Gormley Affidavit-Exh. H).

After a delay of two years, plaintiff brought suit in this court, alleging that defendants' refusal to complete the processing of plaintiff's 1975 salary appeal deprived plaintiff of rights to property without due process. *Greenwald v. Axelrod*, 80 Civ. 2396 (May 29, 1981). Judge Sand dismissed the complaint without prejudice. He found that "in the absence of bad faith or dilatoriness ... the procedure of consolidating the salary appeal and the base year audits [was] reasonable under the circumstances of this case...." Slip op. at 4–5.

In June, 1981, DOH completed the 1973–74 audit and bureau review. Plaintiff appealed the audit, requesting an administrative hearing pursuant to 10 NYCRR § 86–2.7(d). November, 1982, marked the completion of the 1975–79 bureau audit, and plaintiff also sought an administrative appeal on this audit. To date, these appeals remain undecided.

In this suit, plaintiff urges the court to find "bad faith and dilatoriness" on the part of DOH so that consolidation of the salary and audits can no longer be characterized as "reasonable" within the meaning of Judge Sand's decision. Plaintiff also charges defendants with violating the Medicaid statute and the supremacy and due process clauses of the federal constitution.[6] In its motion for summary judgment, DOH highlights plaintiff's failure to exhaust administrative remedies and accuses plaintiff of being uncooperative, thereby himself generating the delays in reaching a final adjudication. Defendants apparently maintain the position that the salary appeal should only be considered in conjunction with the audits.

2. *Discussion*

■ As the bankruptcy court reasoned, the lapse of more than two years since Judge Sand warned about further delays in the audit proceedings has eroded the "reasonableness" of a consolidation of those proceedings with the salary appeal. Severance of the salary appeal from the uncompleted audits, therefore, now replaces consolidation as the proper and reasonable remedy.

■ Defendants' 11th amendment immunity defense and its exhaustion argument, moreover, are rejected as bars to plaintiff's claim for the contested salary funds. In filing a proof of claim [7] for overpayments against debtor-plaintiff, DOH (Health Care Financing Administration) waived its immunity: the debtors' claim to $250,934.00, the unpaid reimbursement for 1975, is expressly allowable under the Bankruptcy Code, 11 U.S.C. § 106(b), as an offset against the state's claim. With respect to the exhaustion defense, the Bankruptcy court concluded, and the court agrees, that plaintiff had exhausted the administrative steps available when he appealed from the 1975 reimbursement rate. Administrative procedures were only revived by the consolidation, which when dissolved, terminated the availability of the additional proceedings. Accordingly, plaintiff is entitled to offset the amount previously awarded by DOH ($250,934.00)

---

**4.** Initially DOH found it owed plaintiff approximately $265,298.00, but this figure was later adjusted downward as a result of an audit disallowing a certain portion of the 1973 base year costs. It appears that the figure is not the subject of serious dispute here. (Gormley Aff. ¶ 19).

**5.** The 1975–76 audit was later broadened to cover plaintiff's 1977–79 base year costs. (Gormley Aff. ¶ 24). Base year cost reports are subject to audit by the DOH pursuant to Public Health Law § 2803(1)(b)(ii) and 10 NYCRR 86–2.7 (and predecessor regulations). (Gormley Aff. ¶ 10).

**6.** Complaint, ¶¶ 86, 88, 90. *See* discussion *infra.*

**7.** The state filed a proof of claim for $911,549.00 based on downward adjustment in plaintiff's Medicaid reimbursement for 1975–76 ($83,549.00) and 1977–81 ($828,000.00.). (Gormley Aff. ¶ 25).

against the state's claim filed against the estate.

Plaintiff urges the court to decide whether the state, in filing a proof of claim against plaintiff which, plaintiff alleges, arises out of the same transaction or occurrence as plaintiff's claim, has also waived its 11th amendment immunity as to plaintiff's claim for affirmative recovery against the state. 11 U.S.C. § 106(a). There is no need to address this issue at this juncture. It appears likely, however, that the state will establish substantial overpayments as a result of the various audits still in process. (Gormley Aff. ¶ 25–26). To minimize the exchange of debts between the state and plaintiff and decrease the risk that one side will come up short in the final tally, it seems wiser, at this point, to await final determinations on the audits and plaintiff's second claim (relating to recoupment of start-up costs) before making a final determination on plaintiff's affirmative claim on its salary appeal. Therefore, the court declines to hold that plaintiff is entitled to judgment on its affirmative claim at this time. *See Matter of Fahey v. Whalen*, 84 Misc.2d 1040, 376 N.Y.S.2d 819 (Sup.Ct. Onondaga Co.1975), *aff'd*, 54 A.D.2d 1097, 388 N.Y.S.2d 960 (4th Dep't.1976).

The court will not, however, allow additional unjustified delay in the audit process to bar plaintiff's recovery of the additional salary payments. Should such delay occur, plaintiff may reapply to the court for consideration of its claim for affirmative recovery on the salary appeal.

### Start-up costs

1. *Background*

Start-up costs[8] and cost carry forward claims form the basis of the remaining five of the complaint's eight causes of action. Plaintiff's main allegation is that he is entitled to certain expenditures, approximately $661,000.00 (Complaint ¶ 46), made during the period between the point when the facility was licensed and began admitting patients and the point when it was approved for operation at its full capacity; DOH permitted plaintiff to capitalize only start-up costs incurred prior to the admission of the facility's first patient.[9]

The dispute arose as a result of defendants' policy of requiring new facilities to limit their initial admissions so as to gradually phase-in operations. (Complaint ¶ 21). When plaintiff opened his facility in January, 1973, it was approved for operation as a 40-bed unit, although it had been certified and licensed as a 120-bed residential health care facility ("RHCF") earlier that month. In accordance with the phase-in policy, DOH approved the operation of an 80-bed unit in February, and in March, plaintiff received approval to operate at full capacity. Plaintiff admitted patients in accordance with these limitations and the facility reached 90% of its full capacity in April, 1973. Plaintiff maintains that defendants incorrectly limited their calculation of plaintiff's start-up during the phase-in period since it was a time in which the facility was developing its ability to furnish patient care.

The dispute, concretely, is over the 1975 reimbursement rate established by DOH; the cost report filed by plaintiff for 1973 formed the basis of the 1975 rate. By letter dated October 10, 1977, plaintiff filed an administrative appeal of the 1975 rate seeking revision. (Gormley Aff.-Exhibit 5,

---

**8.** Start-up costs are those expenditures incurred during the time a facility is developing its ability to furnish patient care. Pursuant to the Medicare Provider Reimbursement Manual, Part I, § 2132, a facility is permitted to capitalize these costs as deferred charges and to amortize them over a number of benefitting periods. In addition, pursuant to § 2614, Part I of the Provider Reimbursement Manual, under certain conditions, arguably present here, a facility may carry forward its unreimbursable reasonable costs for succeeding reporting periods.

**9.** Plaintiff was reimbursed on a "group average" basis during its initial period of operation. The group average rate is based on an average of the operational rate reimbursements issued to other residential health care facilities (RHCFs) of similar size in the same geographic region. (Gormley Aff. ¶ 39). Plaintiff seeks reimbursement of the costs he incurred in excess of the group average payments.

¶ 45). That appeal was denied by letter in October, 1978. DOH found, as a matter of law, that plaintiff was not entitled to the relief sought. In June, 1980, plaintiff commenced an action in this district challenging DOH's failure to reimburse plaintiff for its start-up costs and cost carry forward claims.

Defendants moved for a judgment on the pleadings in that action on the grounds that plaintiff failed to exhaust administrative remedies,[10] failed to commence the action within the four month statute of limitations,[11] and was barred by the 11th amendment. Judge Sand dismissed the case without prejudice. *Greenwald v. Axelrod*, 80 Civ. 3079 (May 27, 1981). An affidavit made out by plaintiff's reimbursement consultant stated that, although the start-up claim had been denied, DOH was permitting plaintiff to raise the claim in connection with a pending audit appeal. Judge Sand wrote that:

> in view of the pendency of this issue before the state administrative agency, intervention ... would be inappropriate at this time, and consideration of plaintiffs' constitutional claims would be premature. After completion of these administrative proceedings, the policy which plaintiffs challenge as violative of the Social Security Act and United States Constitution will be ripe for judicial challenge.

slip op. at 3–4.

It is now clear that the start-up cost appeal was never considered in the audit proceedings. The present complaint raises issues very similar to those pressed before Judge Sand. It alleges that plaintiff has been deprived of property without due process and that defendants have violated the New York State plan and the federal medicaid statute as a result of DOH's failure to resolve plaintiff's start-up costs and cost carry forward claims during the 1973–74 audit review. (Complaint ¶ 52, 54). Also allegedly in violation of the New York State plan and the Medicaid statute was defendants' refusal to permit plaintiff to carry forward for five successive reporting periods unreimbursed costs claimed for the period of its initial operation. (Complaint ¶ 58). Further, plaintiff asserts that in denying the start-up costs and carry forward claims, defendants have failed to reimburse plaintiff in accordance with "rates reasonably related to the cost of efficient production of services," in violation of New York Public Health Law § 2807. (Complaint ¶ 66). Finally, an equal protection claim is made based upon cost recoveries by recipients of Article 28–A loans. (Complaint, ¶ 64).

### 2. Discussion

Before the bankruptcy court and on appeal from its decision here, defendants emphasize two of the defenses raised in the previous suit as bars to this action: plaintiff's failure to exhaust administrative remedies and his failure to pursue, within the limitations period, the appropriate judicial remedy. Defendants assert that plaintiff has no cause of action under 42 U.S.C. § 1983 and cannot avoid either exhaustion of appropriate administrative remedies or the four-month statute of limitations on that basis.

### a. Exhaustion of Administrative Remedies

There can be little doubt, as the bankruptcy court found, that plaintiff has failed to exhaust his administrative remedies. Subsequent to Judge Sand's decision, it became apparent that the affidavit submitted by plaintiff (averring that the start-up cost issue was before a state administrative

---

**10.** Plaintiff did not request a hearing to review defendants' denial of the 1975 reimbursement rate appeal pursuant to 10 NYCRR § 86-2.-14(b)(1). Retroactive rate adjustments resulting from an audit are final unless the RHCF requests a "bureau review" within 30 days of its receipt of the audit report pursuant to 10 NYCRR § 86–2.7(e).

**11.** Plaintiff did not pursue what defendants claim was the appropriate judicial remedy, Article 78 proceedings, which carry a four-month limitation period. NYCPLR § 217.

agency), was not grounded in fact.[12] Thus plaintiff's start-up cost claim never actually proceeded beyond the first level review, which resulted in its denial.

■ Judge Sand's determination that the start-up cost claim was pending before the administrative agency cannot be given *res judicata* effect. Under the principles of *res judicata*, a final judgment on the merits bars a subsequent action between the same parties (or those in privity with them), upon the same claim or demand. *National Labor Relations Bd. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983). But because the doctrine has broad effect—both issues actually decided in determining the claim asserted in the first action and issues which could have been raised in that action are precluded from subsequent litigation, *id.*, its application is carefully conditioned. The previous judgment must have been a final judgment on the merits in order to be given preclusive effect. That requirement has not been met. A dismissal without prejudice is not a final determination on the merits of a claim. *Fannie v. Chamberlain Mfg. Corp., Derry Div.*, 445 F.Supp. 65, 74 (W.D.Pa. 1977), citing *Sack v. Low*, 478 F.2d 360 (2d Cir.1973); *see Rodriguez v. Compass Shipping Co., Ltd.*, 456 F.Supp. 1014, 1017–18 (S.D.N.Y.1978) (Carter, J.), *aff'd*, 617 F.2d 955 (2d Cir.1980), *aff'd*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). There can be no doubt that Judge Sands' dismissal of plaintiff's complaint proceeded on this basis. *Cf. Weston Funding Corp. v. Lafayette Towers, Inc.*, 410 F.Supp. 980, 983–84 (S.D.N.Y.1976) (Carter, J.), *aff'd*, 550 F.2d 710 (2d Cir.1977).

#### b. *Section 1983*

■ Nevertheless, plaintiff's contention that his claim is not barred by an exhaustion requirement succeeds since plaintiff has asserted a valid cause of action pursuant to 42 U.S.C. § 1983 and exhaustion of administrative remedies is not, therefore, required.

In 1980, it became clear for the first time that, as the Supreme Court put it, 42 U.S.C. § 1983 [13] "means what it says." It provides a private cause of action for violation of federal statutory law by state and local officials. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).[14] While the Court has subsequently set limits on its pronouncement in *Thiboutot; see Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Middlesex Country Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981),[15] suits brought pursuant to § 1983 challenging a state's Medicaid reimbursement practices and regulations are not, in general, affected by these limitations. *See, e.g., Randall v. Lukhard*, 709 F.2d 257 (4th Cir.1983), *aff'd in part, rev'd in part on other grounds*, 729 F.2d 966 (4th Cir.1984) (eligibility for Medicaid determined by "transfer of assets" rule); *Curtis v. Taylor*, 625 F.2d 645, *modified on other grounds, reh. denied*, 648 F.2d 946 (5th Cir.1980) (reimbursement for only three physician visits per month); *Illinois Hosp. Ass'n v. Illinois Dep't. of Public Aid*, 576 F.Supp. 360 (N.D.Ill.1983) (reimbursement for inpatient hospital services); *Thomas v. Johnston*, 557 F.Supp. 879 (W.D.Tex.1983) (reimbursement rate for Texas intermediate care facility); *Quaker-*

---

**12.** It seems likely that plaintiff was not solely responsible for the "misinformation" supplied to the court. State defendants raised no objections to the statements made in the affidavit, and there is no indication that the affidavit was submitted in bad faith.

**13.** 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, ... of any state ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws, shall be liable ... in an action at law, suit in equity, or other proceeding....

**14.** In *Thiboutot*, the Court allowed welfare recipients to bring suit under § 1983 to challenge a denial by state officials of federal social security benefits.

**15.** *See*, Note, *Making the Old Federalism Work: Section 1983 and the Rights of Grant-in-Aid Beneficiaries*, 92 Yale L.J. 1001 (1983).

*town Hosp. Ass'n. v. O'Bannon,* 1983 Medicare and Medicaid guide (CCH) ¶ 33,-629 (E.D.Pa.1983).

Plaintiff challenges the state's compliance with 42 U.S.C. § 1396a(a)(13)(A), which provides that the state agency administering Medicaid, DOH, must make payments to providers such as plaintiff,

> which the state finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable state and federal laws....

*Id.* In disallowing certain start-up costs, plaintiff maintains, the state failed to compensate plaintiff for the actual reasonable costs of the services he provided. (Plaintiff's supplemental brief at 3). Defendants counter that they were required by federal law and regulations to disallow the contested expenditures. (Gormley Aff. ¶ 41).

▆ The provision highlighted by both parties to justify their contentions is section 2132 of the Medicare Reimbursement Manual 15 (HIM–15). The relevant paragraph is set out in the margin.[16] Plaintiff points to the portion of HIM–15 which refers to start-up costs incurred when a facility opens on "piecemeal basis." He argues that HIM–15 provides the controlling principles for Medicaid reimbursement in this case because DOH regulations so provide. Defendants underline the first segment of the applicable HIM–15 paragraph, arguing that start-up costs are defined to include only expenses incurred prior to "the time the first patient, whether Medicare or non-Medicare, is admitted." (Gormley Affidavit ¶ 41). More importantly, they argue, Medicare principles do not apply to determi-

nations of either start-up or cost carry forward claims since the application of Medicare reimbursement principles to Medicaid rate setting in New York is "wholly within the discretion" of DOH. (Gormley Aff. ¶ 40). With that contention the court agrees. However, there is a standard which places limits on the state's discretion.

Initially, the Medicaid law did not include any specific requirements regarding the methods of payment to be used to reimburse skilled nursing ("SNF") or intermediate care facilities ("ICF") for services. Consequently, states were permitted to develop their own payment methods, subject to the general requirement that payments not exceed reasonable charges consistent with efficiency, economy and quality of care. In 1973, however, Medicaid was amended to require that each state Medicaid plan provide for reimbursements on a "reasonable cost related basis." The amendment was enacted with an eye on the Medicare model but, nevertheless, provided states with somewhat greater flexibility than did Medicare due to the difficulty of applying that standard to long term care facilities. *See Massachusetts General Hosp. v. Weiner,* 569 F.2d 1156, 1158–59 (1st Cir.1978). In 1980, the requirement that states pay for SNF and ICF services on a reasonable cost-related basis was removed altogether. The successor is current law, 42 U.S.C. § 1396a(a)(13)(A), set out above.

The Senate Finance Committee reports noted that state officials had complained that complex federal regulations implementing the 1972 amendments had unduly fettered their discretion and forced them to rely on Medicare principles of reimbursement, which were inherently inflationary

---

**16.** "Start-up costs are incurred from the time preparation begins on a newly constructed or purchased building, wing, floor ... to the time the first patient, whether Medicare or nonMedicare, is admitted for treatment.... If a provider intends to prepare all portions of its ... facility at the same time, start-up costs for all portions of the facility should be accumulated in a single deferred charge account and should be amortized when the first patient is admitted.... However, if a provider intends to prepare portions of its facility on a piecemeal basis ..., start-up costs should be capitalized and amortized separately for the portion(s) of the provider's facility prepared during different time periods...." Reprinted in CCH Medicare and Medicaid Guide, ¶ 5964.

and contained no incentives for efficient performance. The 1980 provision would, the reports stated, allow states to establish rates without regard to Medicare reimbursement principles. According to the report, it would also minimize the administrative burden placed on the states with regard to the states' provision of accountability assurances to the Secretary.[17]

The Senate Report also stated, however, that "the flexibility given the states is not intended to encourage arbitrary reduction in payment that would adversely affect the quality of care." 46 Fed.Reg. 47964–67 (Sept. 30, 1981); see S.Rep. No. 96–471, 96th Cong.2d Sess., reprinted in 4 Medicare and Medicaid Guide, ¶ 24,407 at 5780–81 (CCH) (1981). The conference report accompanying the 1980 amendment also set a cautious tone. While agreeing with the discretion bestowed upon states, the conferees noted that the methods and standards on which the states based rates of reimbursement were ultimately subject to review by the Secretary of Health and Human Services. They noted "their intent that a state not develop rates under [42 U.S.C. § 1396a(a)(13)(A)] solely on the basis of budgetary appropriations. In determining whether the rates proposed by a state are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities, the Secretary is not expected to approve a rate lower than the applicable legal requirements would mandate." H.Conf.Rep. No. 96–1479, 96th Cong.2d Sess. 154, reprinted in 1980 U.S.Code Cong. & Ad.News 5526, 5594.

In sum, according to its legislative history, the Medicaid statute grants states considerable leeway in fashioning Medicaid reimbursement rates.

■ States need not apply Medicare reimbursement principles in setting Medicaid rates. Nor must states reimburse providers on an actual cost basis. But the statute falls short of abdicating federal standards and control. "[I]t manifestly imposes a substantive limitation on state governmental action—that rates determined by state Medicaid agencies must be high enough to compensate efficiently and economically operated providers for costs necessarily incurred in providing the type of care for their residents that conforms to all applicable state and federal laws and requirements...." Thomas v. Johnston, supra, 557 F.Supp. at 909. Although HIM–15 is not law with regard to the setting of reimbursement rates, the state's denial of certain start-up costs must still be reasonable. Plaintiff states a colorable claim under § 1983 in alleging that defendants abused the discretion granted them pursuant to the federal Medicaid statute by refusing to allow for start-up costs incurred during the required phase-in of the nursing facility's operations. See Hagans v. Lavine, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974).[18]

■ Once this conclusion is reached, plaintiff's failure to exhaust available administrative remedies does not bar this action. Exhaustion of administrative remedies is not a prerequisite to an action pursuant to § 1983. Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Importantly, Medicaid, unlike Medicare, 42 U.S.C. § 1395ii, contains no administrative

17. The Omnibus Reconciliation Act of 1981, Pub.L. 97–35, forced the Department of Health and Human Services to issue regulations implementing the 1980 amendments. See 42 C.F.R. §§ 447.250–447.272.

18. Defendants cite Klein v. Axelrod, 81 A.D.2d 935, 439 N.Y.S.2d 510 (3d Dep't.1981) in making the argument that plaintiff has not asserted a legitimate § 1983 action. That case is readily distinguishable from this one. Plaintiff there presented no more than a challenge to the rate set for his facility; there is no indication that he alleged that the rates set did not comply with the federal statutory requirements, and no constitutional issues were raised. The court in Klein found, therefore, that plaintiff was relegated to pursuing his administrative remedies as an Article 78 appeal.

exhaustion prerequisite restricting judicial review for claims arising under the Act. *See Heckler v. Ringer,* —— U.S. ——, —— ——, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984); *Rhode Island Hosp. v. Califano,* 585 F.2d 1153, 1161 (1st Cir.1978).

#### c. *Statute of Limitations*

 No federal limitations period controls a § 1983 action. Borrowing from the analogous state law provision, *see Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980), this Circuit has adopted a three year limitation for § 1983 actions pursuant to CPLR § 214(2). *Keating v. Carey,* 706 F.2d 377, 381–82 (2d Cir.1983); *Pauk v. Board of Trustees of the City University of New York,* 654 F.2d 856, 866 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982).[19] Although the filing of the § 1983 action concerning start-up and cost carry forward claims before Judge Sand in June, 1980, did not toll the three year period, *see Gutierrez v. Vergari,* 499 F.Supp. 1040, 1049 (S.D.N.Y.1980) (Ward, J.), which commenced to run when plaintiff was notified that these claims had been denied on administrative appeal (October 24, 1978), the period was extended under the Bankruptcy Code, 11 U.S.C. § 108(a) and, therefore, plaintiff's action, filed in June, 1982, was timely. The Code affords a trustee in Bankruptcy a two year extension of a limitations period applicable to any cause of action it may have if the limitation period has not expired on the date of the filing of the debtor's petition.[20] Plaintiff's petition was filed on July 1st, and, therefore, the limitations period extended to August 12, 1983.

#### d. *Summary judgment*

 Summary judgment for defendants is appropriate on plaintiff's constitutional claims. There is no merit to plaintiff's contention that he was deprived of due process of law. He had available to him various levels of administrative appeal and was afforded adequate notice regarding these opportunities to be heard. Likewise, his equal protection claim is implausible. That claim is based on the differences between "reimbursement" to voluntary facilities for mortgage payments on Article 28–A loans and the reimbursement rates set under Medicaid. However, capital expenses reimbursement for Article 28–A facilities differs from capital cost reimbursement for other voluntary facilities, proprietary facilities and public facilities for the purpose of stimulating construction of nonprofit facilities. The differences in the "reimbursement" methodologies have, without question, a rational basis.

 On plaintiff's statutory claim, summary judgment is premature. Neither party, with defendants' omissions the more glaring, provides the court with adequate facts supporting or rejecting the argument that defendants are not in compliance with the Medicaid statute. Plaintiff's reference to *Overlook Nursing Home, Inc. v. United States,* 556 F.2d 500, 214 Ct.Cl. 60 (1977) (allowing start-up costs pursuant to HIM–15 [§ 2132.1] on facts almost identical to those present here) casts doubt on the reasonableness of the state's denial of such costs. However, as explained earlier, construction of Medicare regulations is not dispositive here, and independent facts concerning the reasonableness of defendants' challenged decision must be presented. *See Quakertown Hosp. Ass'n v. O'Ban-*

---

**19.** As in *Pauk,* defendants suggested that the appropriate limitations period is the four-months provided by CPLR 217 for proceedings brought pursuant to Article 78. The court's comments in that case apply here with equal force.

 The brevity of ... [the four-month period] makes it singularly inappropriate for § 1983 actions. Moreover, even if an Article 78 proceeding is available for appellant's constitu-

tional challenge to the denial of his tenure, there is no reason to believe that New York regards this procedure as the exclusive means for pursuing such a claim.
654 F.2d at 863.

**20.** A debtor in possession has most of the rights and powers of a Chapter 11 trustee. 11 U.S.C. § 1107(a).

*non, supra,* Medicare and Medicaid Guide (CCH) ¶ 33,629.

 The court must note, as did the court in *Quakertown,* that plaintiff bears a heavy burden in making his case because of the broad discretion which the federal statute confers upon the states. In addition, a deferential standard governs the court's review of the actions of state agencies and their officials and a presumption of validity attaches to the action of administrative agencies. *Thomas v. Johnston, supra,* 557 F.Supp. at 901, citing *Illinois Council for Long Term Care v. Miller,* 503 F.Supp. 1091, 1094 (N.D.Ill.1980).

Nevertheless, the court must reject defendants' suggestion that the start-up costs issue be remanded to DOH "to permit the State Commissioner to consider whether or not to continue to apply the Medicare reimbursement principles embodied in § 2132 of HIM–15 in light of the interpretation of that section contained in *Overlook Nursing Home, Inc. v. United States, supra,* 556 F.2d 500." (Supp. Brief at 8). The question for remand, as posed, seems incorrect. More to the point, however, are the court's doubts regarding the utility and efficiency of a remand here. This case is not short on delay. Were the question above, or one similar to it, submitted to the Commissioner, there are no guarantees that the case would not reappear here, reiterating the current issues. The case is properly before the court now and should proceed here as expeditiously as possible.

### Conclusion

The bankruptcy court's determination with regard to plaintiff's salary appeal is affirmed. Its conclusions regarding plaintiff's start-up costs appeal are substantially revised. Plaintiff is not barred from bringing his action pursuant to § 1983. Summary judgment is granted to defendants on plaintiff's constitutional claims and denied, as to both parties on plaintiff's statutory challenge.

IT IS SO ORDERED.